PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 10-1308


DENISE MANNELLA

v.

COMMISSIONER OF INTERNAL REVENUE,

Appellant


On Appeal from the United States Tax Court
(Tax Court No. 17531-07)
Tax Court Judges:   Hon. Harry Haines
and Hon. Michael B. Thornton

_

Argued November 17, 2010

_

BEFORE: AMBRO, FISHER and
GREENBERG, Circuit Judges

(Filed:1/19/2011)

_

Derek P. Dissinger (argued)
Russell, Krafft & Gruber
930 Red Rose Court
Hempfield Center, Suite 300
Lancaster, PA 17601-0000

Alice L Stewart
Duquesne University School of Law
Low Income Tax Practicum
Room 125
600 Forbes Avenue
Pittsburgh, PA 15282-0000

Raymond C. Vogliano
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor, U.S. Steel Tower
Pittsburgh, PA 15219-0000

Attorneys for Appellee

John A. DiCicco
Acting Assistant Attorney General
Teresa E. McLaughlin (argued)
Steven W. Parks
Attorneys Tax Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044-0000

William J. Wilkins
Internal Revenue Service
1111 Constitution Avenue, N.W.
Washington, DC 20224-0000

Attorneys for Appellant

Carlton M. Smith
Director, Benjamin N. Cardozo School of Law Tax Clinic
55 Fifth Avenue
New York, NY 10003

Attorney Pro Se as Amicus Curiae

–

OPINION OF THE COURT

–

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before the Court on the Commissioner of Internal Revenue's appeal from a decision of the United States Tax Court entered on November 5, 2009, in accordance with a Tax Court opinion dated April 13, 2009, and a stipulation of the parties dated October 28, 2009, that together provided that Appellee Denise Mannella did not owe any income taxes, interest, or penalties for the taxable years 1996 through 2000.  In its opinion leading to its decision, the

3

Tax Court invalidated a Treasury Department regulation, 26 C.F.R. § 1.6015-5(b)(1), that sets a two-year deadline to file a claim for equitable "innocent spouse" relief under 26 U.S.C. § 6015(f) from liability resulting from a jointly filed federal income tax return. We now hold that the regulation is neither contrary to nor an impermissible implementation of section 6015, and, therefore, inasmuch as Denise filed her claim for innocent spouse relief beyond the regulation's two-year deadline for seeking such relief, we will reverse the decision of the Tax Court. See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984). We, however, will remand the case to that Court to consider an equitable tolling contention that Denise advances on this appeal with respect to the running of the two-year period.[1]

## II.  BACKGROUND

### A.     Statutory and Regulatory Framework

Before addressing the facts of this case, we first quote the Court of Appeals for the Seventh Circuit's thorough explanation of the relevant portions of the Internal Revenue Code and the related Treasury Department regulation at issue:

---

[1]There is no issue raised on this appeal concerning the calculation of the taxes, interest, or penalties.

4

Taxpayers filing a joint return are jointly and severally liable for the entire tax liability shown or that should have been shown on their return.  26 U.S.C. § 6013(d)(3).  But section 6015 of the Internal Revenue Code sets forth grounds-'innocent spouse' rules first added to the Code in 1971 and liberalized since . . . -for relieving the signer of a joint return of his or her joint and several liability for understatement or nonpayment of income tax due.

Section 6015(f), captioned 'equitable relief,' provides that 'under procedures prescribed by the [Secretary of Treasury], if (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency . . . ; and (2) relief is not available to such individual under subsection (b) or (c) [of section 6015], the [Secretary] may relieve such individual of such liability.'   By regulation the Treasury has fixed a deadline for filing claims under subsection (f) of two years from the IRS's first action to collect the tax by (for example) issuing a notice of intent to levy on the taxpayer's property.   26 C.F.R. § 1.6015-5(b)(1); see also IRS Rev. Proc.2003-61 § 4.01(3); 26 U.S.C. § 6630(a).

Lantz v. Commissioner, 607 F.3d 479, 480 (7th Cir. 2010) (internal citations omitted) (alterations in original). As the foregoing passage indicates, the two-year deadline for seeking relief under section 6015(f) does not arise from section 6015 but rather comes from the Treasury regulation implementing subsection 6015(f).

Subsections (b) and (c) of section 6015 also provide avenues of relief for innocent spouses, but, in contrast to subsection (f), both contain two-year filing deadlines for seeking such relief. Subsection (b) provides:

Under procedures prescribed by the Secretary [of Treasury], if–

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

6

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection <u>not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election</u>,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

26 U.S.C. § 6015(b)(1) (emphasis added). Subsection (c) provides for an allocation of liability if the signer of a joint return is divorced, legally separated, or no longer living in the same household as the individual with whom the signer filed the joint return. In a provision paralleling subsection (b)(1)(E), subsection (c) provides that a taxpayer seeking relief under (c) must elect such relief "not later than 2 years after the date on which the [Secretary] has begun collection activities with respect to

7

the individual making the election."    26 U.S.C. § 6015(c)(3)(B).


    B.    Facts

    Denise[2] and her husband Anthony Mannella filed joint federal income tax returns for the years 1996 through 2000.    The Mannellas agreed to the assessment of a deficiency for the year 1996.   For the years 1997, 1998, 1999, and 2000, the Mannellas did not pay fully the taxes their returns showed as due. Consequently, the Commissioner on June 4, 2004, initiated collection procedures to recover the back taxes that they owed by sending the Mannellas separate notices of his intent to levy.   The notices indicated, however, that the Mannellas each had the right to a collection-due-process hearing before such levy.

    The notices instructed the Mannellas how to obtain innocent spouse relief under section 6015 by including an IRS publication titled "What You Should Know About [t]he IRS Collection Process," which contained the following provision:

---

[2]Our use of Denise Mannella's first name in this opinion does not suggest a lack of respect but rather is intended to keep the opinion clear with respect to the parties' identification.

> *Help for an innocent spouse* — In some cases, you may not be responsible for taxes, interest, and penalties on a joint income tax return. Contact your local IRS office for more information. For information about your rights as an innocent spouse, see Publication 971, *Innocent Spouse Relief.* For information on three ways to get help with the amount you owe, see Form 8857, *Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief).*

2 App. at 39, 42. The notices also included IRS Form 12153, which states that "[i]f you believe that your spouse or former spouse should be responsible for all or a portion of the tax liability from your tax return, check here [__] and attach Form 8857, Request for Innocent Spouse Relief, to this request." 2 App. at 51.

The IRS sent the notices to the Mannellas' correct address by certified mail return receipt requested. IRS records indicate that it received signed return receipts dated June 17, 2004, for both notices at an IRS Service Center. Denise asserts, however, that her husband signed her name on the return receipt and did not inform her that the notice had arrived until more than two years after its arrival and the Commissioner does not challenge this assertion. On November 1, 2006, after learning of the notice of intent to levy and speaking with an attorney, Denise filed two Form 8857 applications under section 6015, subsections (b), (c), and (f), for innocent spouse

9

relief from joint and several liability on the Mannellas' joint returns filed for the years 1996-2000. The Commissioner, however, issued Denise a notice of determination dated May 3, 2007, denying her relief under section 6015 because she had not filed her claim within two years of June 4, 2004, the date that the Commissioner took his first collection action against her by mailing her notice of the intent to levy. Denise does not contend that the Commissioner misapplied the statutory and regulatory two-year deadline periods, as written, as she does not assert that she filed her applications within the two-year statutory and regulatory deadlines period allowed for such applications.


C.    Procedural History

In response to the Commissioner's rejection of her applications, Denise, acting pro se, filed a petition for relief with the Tax Court, contending in part:

> My claim for relief was denied because it was filed 4 ½ months to[o] late. When the collection process was started against me [on] June 4, 2004[,] it was immediately stopped. I was informed by my husband that everything was handled and that I was not liable for his tax obligation. The IRS stopped collection activity against me so I thought it was taken care of. I was not aware of any other problems and never

10

> received any other papers from the IRS concerning my liability for his taxes or anything concerning my rights as an innocent spouse. I never received any benefits from my husband not paying his taxes. . . . Denying my claim because it was filed late when I was never informed that a time limit existed is wrong.

2 App. at 4. Denise's husband was informed of his right to intervene in the Tax Court proceedings, but did not do so.

The Commissioner moved for summary judgment on the sole basis that Denise's applications for relief under section 6015 were untimely. She opposed the motion on the ground that she never received her notice from her husband and therefore the two-year period for seeking innocent spouse relief should not have begun to run against her. Denise represented to the Tax Court that she and her husband were prepared to testify in support of her contentions at a trial. She did not argue, however, that the regulation setting a two-year deadline for requesting relief under subsection 6015(f) was invalid.

In an opinion dated April 13, 2009, the Tax Court granted the Commissioner's motion for summary judgment in part and denied it in part. The Court determined that the mailing of the notice to Denise's last known address triggered the running of the two-year deadline periods under subsections 6015(b) and (c)

11

regardless of whether she actually received the June 4, 2004 notice. Accordingly, the Tax Court granted the Commissioner's motion for summary judgment on Denise's claims under those subsections. Nevertheless, the Court <u>sua</u> <u>sponte</u> held that the two-year regulatory deadline under subsection 6015(f) was invalid, a conclusion that it based on its prior decision in <u>Lantz v. Commissioner</u>, 132 T.C. 131 (2009).[3] Consequently, the Court concluded that Denise's subsection (f) claim was timely and it denied the Commissioner summary judgment on that claim.

After the Tax Court filed its opinion, the parties executed a stipulation that if Denise's subsection (f) request had been timely, which it was if the regulation was invalid, Denise "is entitled to relief from all joint and several liabilities in income tax, additions to tax, penalties and assessed interest" for all the taxable years within the scope of this action. <u>See</u> 2 App. at 74. Following the filing of the stipulation, the Tax Court entered a decision on November 5, 2009, in Denise's favor, but reserving the Commissioner's right to appeal, which he has done.

_____

[3]As we discuss below, after the Tax Court filed its opinion and decision in this case, the Court of Appeals for the Seventh Circuit reversed the Tax Court decision in <u>Lantz</u> in an opinion filed June 8, 2010. <u>See</u> 607 F.3d 479. In this opinion we refer to the Tax Court opinion in that litigation as <u>Lantz v. Commissioner</u> and the Court of Appeals opinion as <u>Lantz</u>.

12

## III. JURISDICTION AND STANDARD OF REVIEW

The Tax Court had jurisdiction pursuant to 26 U.S.C. §§ 6015(e)(1)(A)(ii) and 7442, and we have jurisdiction to review that Court's decision granting summary judgment pursuant to 26 U.S.C. § 7482(a)(1). Our review of the Tax Court's decision is plenary. Connecticut Gen. Life Ins. Co. v. Comm'r, 177 F.3d 136, 143 (3d Cir. 1999); ACM P'ship v. Comm'r, 157 F.3d 231, 245 (3d Cir. 1998).

## IV. DISCUSSION

The primary issue on this appeal is whether the Secretary validly exercised his rulemaking authority in adopting the regulation setting a two-year deadline for requesting relief under subsection 6015(f). In considering this issue we apply the principles the Supreme Court set forth in Chevron that we recently explained as follows:

> [U]nder Chevron, we must first determine 'if the statute is silent or ambiguous with respect to the specific issue of law in the case, using traditional tools of statutory construction to determine whether Congress had an intention on the precise question at issue.' If congressional intent is

13

clear, 'the inquiry ends, as both the agency and the court must give effect to the plain language of the statute.' Where, however, a 'statute is silent or ambiguous with respect to the specific issue, the court proceeds to step two, where it inquires whether the agency's answer is based on a permissible construction of the statute.'

Lin-Zheng v. Attorney Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citations omitted). The Tax Court in this case, following its opinion in Lantz v. Commissioner in which it had applied Chevron, held that the regulation conflicts with the clear language of subsection 6015(f) and that, even if the language of the statute is ambiguous, the regulation impermissibly implements that subsection. Denise, with effective assistance from amicus curiae, supplements the Tax Court opinion by arguing that even if we uphold the regulation under Chevron, the two-year filing deadline is subject to the doctrine of equitable tolling and that there should be equitable tolling in her case to the end that her applications were timely. We consider each issue in turn.

A.    Lantz

As we have indicated, in invalidating the regulation the Tax Court followed its prior decision in Lantz v. Commissioner in which it stated:

14

> [b]y explicitly creating a 2-year limitation in subsections (b) and (c) but not subsection (f) [of section 6015], Congress has 'spoken' by its audible silence. Because the regulation imposes a limitation that Congress explicitly incorporated into subsections (b) and (c) but omitted from subsection (f), it fails the first prong of Chevron.

132 T.C. at 139. The Tax Court further reasoned that because subsection (f), in terms, is only available to taxpayers ineligible for relief under subsections (b) or (c), Congress, by omitting the two-year time limit in subsection (f), intended that the subsection be available to taxpayers who missed the filing deadline under subsections (b) or (c) as a result of some inequity. Id. at 139-41.

After the Commissioner filed his opening brief on this appeal, the Court of Appeals for the Seventh Circuit released the opinion in Lantz, which we quote above, reversing the decision of the Tax Court in that case and upholding the two-year regulatory deadline for claims filed under subsection 6015(f). In its opinion the Court of Appeals rejected the Tax Court's theory of "audible silence." In so doing, the Court noted that "if there is no deadline in subsection (f), the two-year deadlines in subsections (b) and (c) will be set largely at naught because the substantive criteria of those subsections are virtually the same as those of [subsection] (f)." Lantz, 607 F.3d at 484. The Court found further support for its

15

decision in several of section 6015's provisions—including the introductory phrase of subsection (f)—expressly granting the Secretary rulemaking authority, and in the circumstance that subsection (f), rather than requiring the Secretary to grant relief if certain conditions are met, vests him with discretion to grant such relief. Id. at 485; see Lopez v. Davis, 531 U.S. 230, 243-44, 121 S.Ct. 714, 723-24 (2001) ("[E]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.") (internal citation and quotation marks omitted).

### B.    Chevron - Step 1

The Supreme Court in Chevron instructed that courts, when analyzing administrative regulations to determine if they are valid, first should look at whether Congress has "directly spoken to the precise question at issue." 467 U.S. at 842, 104 S.Ct. at 2781. Denise argues that Congress unequivocally has spoken to the question at issue here and has precluded the Secretary from adopting a regulation establishing a two-year filing deadline under subsection (f). She predicates this contention on the correct observation that Congress did not include a two-year filing deadline in subsection (f) equivalent to that it did include in subsections (b) and (c). Rather, Congress instructed the Secretary to consider all

16

relevant facts and circumstances when deciding whether to grant relief under subsection (f), and stated that relief is available under subsection (f) only if unavailable under (b) and (c). We disagree with Denise on this point.

Section 6015 tells us nothing about when claims may be brought under subsection (f) as the section does not address this point. We agree with the Court of Appeals for the Seventh Circuit that this silence is not made audible by the presence of deadlines in subsections (b) and (c). Though we recognize that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," see City of Chicago v. Envtl. Def. Fund, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593 (1994) (internal quotation marks and citation omitted), the absence of a statutory filing deadline in subsection (f) similar to those in subsections (b) and (c) does not require us to conclude that the Secretary cannot impose a two-year deadline by regulation.

It is important to recognize that there can be several explanations for Congress's omission of a deadline for filing an application for relief under subsection (f). To start with, Congress may have intended to defer the issue of timing to the Secretary who can establish procedures for granting relief under subsection (f) and can determine whether relief, no matter when sought, should be granted.[4] On the other

---

[4] There is considerable discussion on this appeal

17

hand, it is possible that Congress intended that there not be a deadline for claims under subsection (f) or, alternatively, that any deadline imposed by a regulation under that subsection be greater than the two-year period provided in subsections (b) and (c). But we cannot say that section 6015, in terms, requires that we embrace any particular view of Congress's intent with respect to a subsection (f) filing deadline.

between the parties involving the question of whether a limitations period is procedural or substantive. But we will not focus on that discussion as we are not concerned with issues such as the applicability of federal or state law under Erie R. Co. v. Tomkins, 304 U.S. 64, 58 S.Ct. 817 (1938), or the choice of law when the law of different states may be implicated in litigation. Rather, we are concerned with whether Congress intended to authorize the Secretary to include a filing time deadline among the "procedures" that he can adopt to implement subsection 6015(f).

18

Nor is the question of whether there can be a two-year deadline period under subsection (f) answered by its provision that the Secretary "tak[e] into account all the facts and circumstances" when deciding whether to grant relief under that subsection.  See 26 U.S.C. § 6015(f)(1).  Denise argues that this instruction makes clear that the timing of the request is a factor that the Secretary must take into account in considering a claim under subsection 6015(f).  Congress, however, included an identical instruction in subsection (b), see 26 U.S.C. § 6015(b)(1)(D), despite the presence of an explicit filing deadline in that subsection, see subsection (b)(1)(E), and the requirement that relief be granted if all the criteria listed in subsection (b)(1) are satisfied.  The Secretary thus cannot grant relief to a taxpayer who elects to seek subsection (b) relief after the deadline under that subsection has passed, nor can he consider timing as a factor in a determination of whether to grant relief if the taxpayer makes a request for relief within the two-year period.  Because the Secretary is prevented from considering the timing of an election for relief under subsection (b) notwithstanding the statutory instruction to "tak[e] into account all the facts and circumstances," we hardly can hold that the exact same instruction clearly requires the Secretary to consider the timing of a request for relief on an individualized basis under subsection (f).

Denise also points to the circumstance that relief under subsection (f) is limited to individuals ineligible for relief under subsections (b) and (c).  See 26 U.S.C. § 6015(f)(2).  Because the requirements for relief under subsections (b) and (f) are similar, though not identical, Denise argues that Congress must have intended that

19

relief under subsection (f) be available to persons who missed the filing deadline under subsection (b). Yet Denise does not dispute that, regardless of timing, a taxpayer would be eligible for relief under subsection (f) but not subsection (b) when the taxpayer is seeking relief from liability for an underpayment as distinguished from an understatement of taxes, undoubtedly a very large category of cases, or when the taxpayer is seeking relief from an understatement that he or she knew or should have known was made. Accordingly, subsection (f)'s exclusion of those eligible for relief under subsection (b) and (c) sheds little light on the question before us.

What subsection (f)(2) may mean is that for relief to be granted under subsection (f) it must never have been available under subsection (b) or (c) whether or not timely sought under those subsections. Indeed, such a view of Congress's intent would be consistent with the establishment of explicit deadline periods in subsections (b) and (c). Along this line we point out that it would be strange if Congress established a deadline for a claim under one subsection but also provided that a claimant at a date beyond that deadline could make the same claim for the same type of relief under another subsection and thereby effectively by-pass the deadline period. In addressing this point we reiterate that among the reasons that relief might be available under subsection (f) that never was available under subsection (b) or (c) is that subsection (f) relief may be available for both understatements and underpayments of taxes whereas subsections (b) and (c) are limited to understatements. Therefore, the provision of subsection (f) limiting the

20

availability of that subsection to taxpayers ineligible for relief under subsection (b) and (c) has real meaning even if it does not save claims that had been, but no longer are, within the scope of subsections (b) and (c) because, if asserted, they would be untimely under those two subsections. Overall, we see no escape from the conclusion that section 6015 is ambiguous on the question of when a request for relief may be brought under subsection (f).

C.    Chevron - Step 2

Inasmuch as Congress has not spoken directly to the precise question in issue, i.e., can the Secretary by regulation establish a deadline for a taxpayer to seek subsection (f) relief, we next must examine whether the Secretary's imposition of a two-year deadline for claims brought under subsection (f) permissibly implements that subsection. In resolving this question, we defer to the Secretary's implementation of the subsection "unless the legislative history or the purpose and structure of the act clearly reveal a contrary intent on the part of Congress." Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 110 (3d Cir. 1996) (quoting Chem. Mfrs. Ass'n v. Natural Res. Def. Council, Inc., 470 U.S. 116, 126, 105 S.Ct. 1102, 1108 (1985)). "So long as the regulation bears a fair relationship to the language of the statute, reflects the views of those who sought its enactment, and matches the purpose they articulated, it will merit deference.'" Id. at 110 (quoting

<u>Sekula v. F.D.I.C.</u>, 39 F.3d 448, 452 (3d Cir. 1994)).[5] We therefore turn to the legislative history and purpose of section 6015 to determine whether they reveal that Congress had an intent in adopting section 6015(f) that was contrary to the regulation establishing the two-year deadline.   <u>See</u> <u>id.</u>

---

[5]The deference is particularly broad when the regulation is adopted pursuant to authority in a specific statute as distinguished from being adopted under general rule making authority.   <u>See</u> <u>Armstrong World Indus. Inc. v. Comm'r</u>, 974 F.2d 422, 441 (3d Cir. 1992).

In her brief, Denise discusses the legislative history of the provisions at issue at some length. In particular, she points to statements various Senators made and passages from a joint conference report to the effect that Congress intended to expand significantly the prior innocent spouse provisions in 1998 and 2006. See appellee's br. at 25-34. Certainly there is no doubt but that Congress significantly expanded the circumstances in which a taxpayer could obtain innocent spouse relief when it enacted section 6015 in its current form. For example, the current statute eliminates the previous requirements that innocent spouse relief be limited to grossly erroneous items attributable to the other spouse and that the Secretary grant relief only for understatements exceeding a certain monetary threshold. See 26 U.S.C. § 6013(e), repealed by Internal Revenue Restructuring and Reform Act of 1998, ("RRA"), Pub. L. No. 105-206 § 3201, 112 Stat. 685, 740. Moreover, the addition of subsection (f), notwithstanding the Secretary's adoption of the regulatory two-year deadline, allows for the possibility of there being relief for underpayments and for understatements of which the taxpayer seeking relief knew or should have known.

The closest Denise is able to come to pointing to any legislative history suggesting that Congress in enacting subsection 6015(f) had an intent inconsistent with the terms of the regulation is in the legislative history of 26 U.S.C. § 66. That provision of the Internal Revenue Code addresses the treatment of community property in community property states when spouses do not file income tax returns jointly. Congress amended

23

subsection (c) of section 66 by the same act that created subsection 6015(f) [6] and therefore, not surprisingly, subsection 66 provides for equitable relief in language that mirrors that of subsection 6015(f). See 26 U.S.C. § 66(c)(4); RRA Pub. L. No. 105-206 § 3201, 112 Stat. 685, 740. Some statements in the legislative history of section 66(c) suggest that the Secretary, when "taking into account all the facts and circumstances," 26 U.S.C. § 66(c)(4), should consider the timing of the request for relief.

The foregoing history, which the Tax Court discussed in its opinion in Lantz v. Commissioner, 132 T.C. at 141-44, lends some support to Denise's position, but it fails to overcome the deference that we must give to Treasury Regulation § 1.6015-5(b)(1) under Chevron and it does not clearly demonstrate that Congress intended that requests for relief under subsection 6015(f) not be subject to a two-year filing deadline. Accordingly, the regulation is valid. See also Swallows Holding, Ltd. v. Comm'r, 515 F.3d 162, 172 (3d Cir. 2008) ("Drawing [a] temporal line [to claim a tax deduction] is a task properly within the powers and expertise of the IRS. Chevron recognizes the notion that the IRS is in a superior position to make judgments concerning the administration of the ambiguities in its enabling statute.").

---

[6]See RRA, Pub. L. No. 105-206, 112 Stat. 685.

Finally, in our discussion of <u>Chevron</u> we take note of Denise's argument that the inclusion of deadline periods in subsections (b) and (c) but omission of such a period in subsection (f) "demonstrates Congressional intent that requests for equitable relief not be subject to a bright-line time limitation, but rather allow the taxpayer to request relief during the 10-year collection period of [26 U.S.C.] § 6502."   Appellee's br. at 15.   But inasmuch as Section 6502 is a limitation only on the government's time for collection, Denise really is arguing that there is no deadline for filing a subsection (f) claim and that the Secretary by regulation cannot fill the void that Congress left by omitting such a deadline.   We are reluctant to reach such a result as it would be inconsistent with the practice of the federal courts to borrow statutes of limitations from appropriate sources, even state law, to fill the void that Congress leaves when it does not establish a statute of limitations.   <u>See, e.g., Lake v. Arnold</u>, 232 F.3d 360, 366 (3d Cir. 2000).   Moreover, Denise's argument is hardly consistent with the general practice of Congress to provide for all sorts of specific periods for action to be taken under the Internal Revenue Code.[7]

---

[7]We have not overlooked our contemporaneous opinion in <u>Rea v. Federated Investors</u>, No. 10-1440, 2010 U.S. App. LEXIS 25501, at * 7, ___ F.3d ___, ___ (3d Cir. Dec. 15, 2010), a case construing a statute dealing with employment protection to persons who had been or were in bankruptcy enacted in a format in some ways similar to that in section 6015.   There we would not expand on the limited protection given to persons in

25

private employment from bankruptcy discrimination to include the more expansive protection from bankruptcy discrimination given to pubic employees.   In <u>Rea</u> we declined to "contravene congressional intent by implying statutory language that Congress omitted."   But <u>Rea</u> dealt with the construction of a statute, not with whether a regulation implementing a statute should be upheld under the principles in <u>Chevron</u>, the issue involved here.   Thus, though we uphold the regulation at issue here we are not "implying" anything into section 6015.

26

D.    Equitable Tolling

Denise lastly argues that even if the regulation is valid, it is subject to equitable tolling and she urges that the deadline period be tolled here.[8]  We have held that "the tolling of filing deadlines is appropriate where principles of equity would make the rigid application of a limitation period unfair."  Walker v. Astrue, 593 F.3d 274, 279 (3d Cir. 2010) (internal quotation marks and citation omitted).   There may be equitable tolling "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) (internal quotation marks and citation omitted).   But inasmuch as the Tax Court did not address the equitable tolling issue and additional facts not in the record may be material to the issue we think that that Court should explore the issue in the first instance.  We therefore will remand the case to the Tax Court to decide whether the Treasury Department regulation at 26 C.F.R. § 1.6015-5(b)(1) is subject to equitable tolling and, if so, whether Denise meets the equitable tolling standard.

---

[8]In the section of her brief dealing with equitable tolling Denise does not explain why there should be equitable tolling in this case.  Rather, she concentrates on why there can be equitable tolling.

## V. CONCLUSION

For the foregoing reasons we will reverse the decision of the Tax Court entered November 5, 2009, to the extent that that decision reflected the Tax Court's opinion that the regulatory deadline for claims under subsection 6015(f) is invalid, and will remand the case to the Tax Court to consider the equitable tolling issue. The parties will bear their own costs on this appeal.

AMBRO, Circuit Judge, dissenting

Spouses seeking relief from joint and several liability for understatements or underpayments of income taxes look to 26 U.S.C. § 6015. Among other things, it spares innocent spouses when it is equitable to do so. *Id.* § 6015(b) (dealing with understatements).[9] But to be eligible for relief they must apply within two years after the IRS begins collection activity. *Id.* § 6015(b).

What if an innocent spouse does not qualify because two years have passed since collection efforts began? It appears there is a safety-valve (Ms. Mannella's counsel calls it a "catchall") — § 6015(f). All that it requires, other than

---

[1] Section 6015(c) also provides relief for certain divorced or separated taxpayers, and for these persons imposes an explicit two-year statute of limitations. However, it is of little relevance to our case and is not discussed in this dissent.

showing relief is not available under subsection (b), is that it not be fair to hold the innocent spouse responsible for the other spouse's tax liability. The intuitive (indeed, blink) thought, then, is that the time to file under subsection (f) extends beyond two years. After all, it can't logically be less time, as subsection (b) is available for at least some taxpayers who elect within two years, and thus, one would think, (f) would be available for later applicants.

Is it that easy? Well, no. There is a catch (as opposed to a catchall), we are told. Though subsection (f) enacted by Congress sets no time limit to seek relief, the Department of the Treasury 10 has adopted a Regulation — 26 C.F.R. § 1.6015-5(b)(1), complemented by IRS Rev. Proc. 2003-61 § 4.01(3)11 — that does. It is two years.

The United States Tax Court has overruled that deadline, *Mannella v. C.I.R.*, 132 T.C. 196 (2009), and the IRS appeals. Its argument, which won in the Seventh Circuit Court's decision in *Lantz v. C.I.R.*, 607 F.3d 479 (7th Cir. 2010), is essentially that *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), requires us to defer to its judgment, as that judgment is reasonable.

The Tax Court, whose hands heretofore were tied only in the Seventh Circuit,12 reasons that the Regulation is invalid

2 I use "Department of the Treasury," "Secretary" (or "Secretary of the Treasury"), the "Service," and "IRS" interchangeably.

3 *See also* Rev. Proc. 2000-15 § 4.01(3).

4 *See Golsen v. Commissioner*, 54 T.C. 742, 1970 WL 2191 (1970), *aff'd* 445 F.2d 985 (10th Cir. 1971) (determining

under step one of *Chevron*'s procedure for reviewing an agency's construction of a statute it administers because Congress has spoken directly to the issue involved. Specifically, the Tax Court reasons that the Regulation "runs directly contrary to the nature of the relief provided in section 6015(f)." 132 T.C. at 202. And even were subsection (f) deemed silent or ambiguous, "a 2-year limitations period is not a permissible construction of [that provision], and therefore [the Regulation] is invalid under *Chevron* step 2," *id.*, which holds that congressional silence or ambiguity on a specific issue confers on the administrative agency the power to construe the statute in any way that is permissible (that is, reasonable).

I agree with my colleagues, and not the Tax Court, that Congress has not spoken directly on what the timeframe under subsection (f) must be. Indeed, the subsection is literally silent.13

In that case, *Chevron's* second step comes into play. My colleagues, and all three members of the panel in *Lantz*, hold that the Regulation passes muster. They reason, per *Chevron*, that deference is due an agency's construction of a statute it implements, *i.e.*, a presumption of validity attends that construction. Thus, though Ms. Mannella's position has

---

that the Tax Court must apply the law of the Court of Appeals to which an appeal for that case would later lie).

13 That said, the Tax Court's reasoning is not so specious that it deserves to be dismissed as simply oxymoronic by its use of "audible silence." *Lantz*, 607 F.3d at 481. That gibe, however, does sidestep another oxymoron – humble pedantry.

"support," Maj. Op. at 22, and "[t]he arguments against the Tax Court's interpretation of subsection (f) as barring a fixed deadline . . . are powerful," *Lantz*, 607 F.3d at 486, they do not overcome that presumption. Put another way, that some, or even most, courts would have chosen a different deadline than that picked by the IRS is irrelevant, as the Supreme Court has settled since 1984 who gets first call in construing the statute.14

But that first call must be reasonable. It is hard to say that is so when the IRS gives no reasons for "add[ing] a new threshold requirement," Rev. Proc. 2003-61 §3.01, for subsection (f) eligibility. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). Here, however, the IRS has not advanced any reasoning for its decision to impose a two-year limitations period on taxpayers seeking relief under subsection (f), leaving us no basis to

---

14 As this is settled law, I don't enter the well-vetted briarpatch of whether the Supreme Court should have accorded agencies of the Executive Branch interpretive powers that courts thought by tradition belonged to them. *See generally* Jack M. Beerman, *End the Chevron Experiment Now: How Chevron Has Failed and Why It Can and Should be Overruled*, 42 Conn. L. Rev. 779 (2010); Cass R. Sunstein, *Law and Administration After Chevron*, 90 Colum. L. Rev. 2071 (1990); Cynthia R. Farina, *Statutory Interpretation and the Balance of Power in the Administrative State*, 89 Colum. L. Rev. 452 (1989); Joseph F. Weis, Jr., *A Judicial Perspective on Deference to Administrative Agencies: Some Grenades From the Trenches*, 2 Admin. L. J. 301 (1988).

conduct the analysis mandated by *Chevron* step two.

There may exist justifications on which the IRS could have reasonably relied in order to impose a two-year limit on subsection (f) relief. The problem is that there are also arbitrary and capricious reasons that, if articulated by the Service as the basis for the two-year limit, would require us to strike down that limit—for example, if the IRS enacted the two-year deadline based on an incorrect belief that the statute required it, or based on a factual supposition belied by the administrative record. *See, e.g., Zheng v. Gonzales*, 422 F.3d 98, 120 (3d Cir. 2005) (rejecting immigration regulation at *Chevron* step two because it was based on an impermissible reading of the 8 U.S.C. § 1255(a)). Because the IRS has not articulated its reasoning, we cannot discern whether the two-year limit falls into the permissible, or the arbitrary and capricious, category.

Into the vacuum left by the IRS the *Lantz* Court has injected reasoning of its own, which my colleagues cite at length. But it is black-letter law—and a necessary corollary of the deference owed to agencies—that courts may not supplement deficient agency reasoning. *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). Thus, the *Lantz* Court's surrogate surmising of agency reasons does not, I believe, save the two-year limit.15

_____

15 My colleagues largely do not engage in this exercise (though nothing they write shows disagreement), instead rejecting Ms. Mannella's arguments against the two-year limit because they do not "clearly demonstrate that Congress intended that requests for relief under subsection 6015(f) not

Further, I do not find *Lantz*'s reasoning in support of the two-year limit to be convincing. I will address those reasons, which my colleagues seemingly endorse, in turn.

**1.** **Reason:** The *Lantz* Court wrote that, absent a two-year deadline in (f), the two-year deadline in (b) would be made superfluous, as "the substantive criteria of th[at] section[] are virtually the same as those of (f)." *Lantz*, 607 F.3d at 484. Indeed, it took this thought even further by stating that "[h]ad the Treasury decided to impose no deadline on the filing of claims under subsection (f), or even just a deadline longer than two years, or in lieu of a fixed deadline the flexible deadline of the laches doctrine, it would have been undermining the two-year deadline fixed by Congress in subsection[] (b)." *Id.*

**Response:** To begin, to the extent that it is correct that the "substantive criteria" of (b) and (f) are "virtually the same," *id.* at 484, then *Lantz*'s approach renders subsection (f) superfluous, which cannot be what Congress intended. As *Lantz* later notes, however (and the majority agrees, Maj. Op. at 18), there is a large class of taxpayers who would be eligible

---

be subject to a two-year filing deadline." Maj. Op. at 20. By this approach my colleagues place on Ms. Mannella the burden (a heavy one, at that) of proving that it is not reasonable to adopt a deadline backed by no reason. I do not buy this approach. Moreover, it also ducks the critical inquiry—whether the IRS's reason for implementing the two-year limit was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). By abjuring reason, the IRS, I believe, abuses its discretion.

33

for relief under (f), but not (b), because the latter, unlike the former, applies only to: (i) tax understatements, and not tax underpayments; *id.* at 486; and (ii) spouses who lacked actual or constructive knowledge of the understatement.

Moreover, subsection (f) will not "undermin[e]" the two-year deadline imposed in subsection (b) even as to those taxpayers who (but for the two-year limit) might qualify under both subsections. Of significance, (f) is discretionary, whereas (b) is mandatory. *Compare* § 6015(f) ("the Secretary *may* relieve [the innocent spouse] of such liability"), *with* § 6015(b) ("the [innocent spouse] *shall* be relieved of liability for tax") (emphases added). Thus, even if (f) has no time limit, taxpayers who might qualify under (b) would be well-advised to file in time to take advantage of that mandatory provision instead of waiting to seek discretionary relief under (f). Put another way, Congress could have chosen to free the IRS to afford discretionary relief to innocent spouses who missed the two-year deadline in certain exceptional cases, while maintaining the two-year limitations period for the mine-run of cases.

In addition, as my colleagues note, Maj. Op. at 21-22, Congress amended 26 U.S.C. § 66 (addressing the treatment of community property when spouses do not file joint returns in community-property states) by adding a subsection (c) at the same time it added subsection (f) to § 6015, and the language of each subsection mirrors the other. Statements in the legislative history of § 66(c) indicate that the IRS should consider the timing of the request for relief. H.R. Rep. No. 98-432, pt 2, at 1501 & 03 (1984) (the IRS should consider, *inter alia*, "whether the defense was promptly raised so as to prevent the period of limitations from running on the other spouse"). Moreover, the Tax Court pointed out in its decision

34

now reversed by the Seventh Circuit that, "[i]n [the] announcement of the proposed regulations under [§] 66(c), 67 Fed. Reg. 2841 (Jan. 22, 2002), the Secretary [of the Treasury] observed that the relief provided in sec. 66(c) is analogous to the relief provision in section 6015(b) *** [and] section 6015(f)." *Lantz v. C.I.R.*, 132 T.C. 131, 142 n.9 (2009), *overruled by* 607 F.3d 479 (7th Cir. 2010).

**2. Reason:** The *Lantz* Court also observed that "[s]ince the government can refuse to grant equitable relief to someone who meets the statutory criteria and applies within two years of the first collection action, why can't it decide to deny relief to a *class* of applicants defined as those who waited too long?" 607 F.3d at 485 (emphasis in text).

**Response:** I agree that the answer to this rhetorical question is that the Secretary can exercise the discretion granted by subsection (f) either case-by-case or categorically. *Cf. Lopez v. Davis*, 531 U.S. 230, 243-44 (2001) (Bureau of Prisons could exercise its discretion to reduce the sentences of certain prisoners on a categorical basis). However, because it is not clear why the IRS promulgated the two-year limit (or whether it even purported to do so as an exercise of its discretion at all, rather than out of a misguided perception of what the statute required), its authority to exercise its discretion categorically should not save the two-year limit the Regulation by ukase imposes.

**3. Reason**: Though "innocent spouses who fall through the cracks in (b)," *Lantz*, 607 F.3d at 484., have the safety protection of (f), "[t]he details . . . were left to the Treasury Department to work out . . . ." *Id.* The preamble to (f) confers on the Secretary of the Treasury the right to prescribe "procedures" to relieve individuals of liability on

35

joint income tax returns. When claims may be brought is such a procedure. "Congress's authorizing an agency to grant discretionary relief under procedures that the agency is to devise itself . . . writes the agency a blank check; and one of the blanks on the check is the deadline for applying for such relief." *Id.* at 485.

**Response**: If the preamble to both subsections (b) and (f) is "[u]nder procedures prescribed by the Secretary," and (b) has a deadline of two years while (f) does not, then is not that deadline substantive rather than procedural? Procedures here cover how to go about making a request for relief, and limitations periods are generally considered substantive. *Cf. Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (statutes of limitation are substantive, not procedural, for purposes of determining whether state or federal law applies in diversity cases). More specifically, in the tax context "a time bar is not simply a procedural rule. In the case of equity, it has the substantive effect of making one circumstance, the time of the claim, the only relevant factor." *Hall v. C.I.R.*, 2010 WL 3703837 *3 (U.S. Tax Ct.).

**4. Reason:** Finally, the *Lantz* Court observed that the IRS could impose a deadline for subsection (f) applications "designed to reduce the flow to manageable proportions." 607 F.3d at 486.

**Response:** While it may be true that the IRS could impose a deadline in order to reduce the sheer number of applications for relief under subsection (f), that observation is of little relevance here, where there is no administrative (or other) record of an unmanageable flow of late-filed exemption applications.

36

\*    \*    \*    \*    \*

To deny taxpayers who miss the deadline to invoke subsection (b) even a chance to make an equitable exemption claim under (f) is concededly "harsh." *Id*. Those taxpayers are left in a Catch-22 paradox: they are ineligible to seek an exemption under (f) unless ineligible under (b), but once ineligible as to timing under the latter they can't be eligible under the former. The take-away thought for some may be that Congress could have drafted directly (or more clearly) but it didn't, and now the agency gets to make the gatekeeping rules. But the agency only gets to do so within reason.

And there's the rub. It gave no reasons. Courts thus make up or surmise reasons (and even they underwhelm). Is this the proper way to review interpretive decisions by agencies?

The Supreme Court has answered that question in the negative. To repeat: "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs Ass'n*, 463 U.S. at 50. When courts ignore that admonition, *Chevron* becomes an exit ramp to the twilight zone by "reliev[ing] the pressure on agencies to develop a full, expert record . . . ." Elizabeth V. Foote, *Statutory Interpretation or Public Administration: How Chevron Misconceives the Function of Agencies and Why it Matters*, 59 Admin. L. Rev. 673, 710 (Fall 2007). In this way, "[r]eviewing courts can brush off serious challenges to agency decisions by invoking *Chevron* without engaging whether the agency is thwarting imperfectly expressed congressional intent." Beerman, *End the Failed Chevron Experiment Now: How Chevron Has Failed and Why It Can and Should be Overruled*, 42 Conn. L. Rev. at 784. I

37

believe this is what happened here, and thus respectfully dissent.