**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

OCTAVIA C. JONES,

        *Petitioner-Appellee,*

v.

COMMISSIONER OF INTERNAL
REVENUE,

        *Respondent-Appellant.*

No. 10-1985

Appeal from the United States Tax Court.
(Tax Ct. No. 17359-08)

Argued: May 12, 2011

Decided: June 13, 2011

Before WILKINSON, NIEMEYER, and KEENAN,
Circuit Judges.

Reversed and remanded by published opinion. Judge
Niemeyer wrote the opinion, in which Judge Wilkinson and
Judge Keenan joined.

**COUNSEL**

**ARGUED:** Teresa E. McLaughlin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Timothy Lee Jacobs, HUNTON & WILLIAMS, LLP, Washington, D.C., for Appellee. **ON BRIEF:** John A. DiCicco, Acting Assistant Attorney General, Steven Parks, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

This case presents the question of whether Treasury Regulation § 1.6015-5(b)(1), 26 C.F.R. § 1.6015-5(b)(1), establishing a two-year limitations period within which to request equitable innocent spouse relief from joint and several income tax liability under I.R.C. § 6015(f), is a valid regulation.

Robert and Octavia Jones filed a joint income tax return for the year 2000. After they legally separated, the IRS audited the return and assessed a deficiency, which Robert Jones agreed to discharge through an installment payment plan. When he defaulted, however, the IRS began efforts to collect the deficiency from both Robert and Octavia Jones.

More than two years after the IRS first began its collection activities, Octavia Jones requested innocent spouse relief from her tax liability under I.R.C. § 6015(f). While the IRS agreed that Octavia would otherwise qualify for such relief, it denied relief because she made her request more than two years after the IRS began collection activities and Regulation § 1.6015-5(b)(1) precludes relief in a situation, like the one in this case, where the applicant requests relief more than two years after the IRS began collection activities.

On her petition to the Tax Court, however, the Tax Court ruled that Regulation § 1.6015-5(b)(1) was invalid for the reasons it had given earlier in *Lantz v. Commissioner*, 132 T.C. 131 (2009). The court thus granted Octavia Jones relief from all tax liability in excess of $450. The Commissioner of Internal Revenue appealed.

Under the analytical framework established by *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we conclude that I.R.C. § 6015 is ambiguous with regard to any limitations period applicable to § 6015(f) and that Treasury Regulation § 1.6015-5(b)(1), fixing a two-year limitations period within which to request relief under § 6015(f), constitutes a permissible interpretation of the statute. Because we conclude that the regulation is valid, we reverse the judgment of the Tax Court and remand for further proceedings.

I

As a general matter, taxpayers filing joint income tax returns are jointly and severally liable for any tax liability that arises from their filings and returns. *See* I.R.C. § 6013(d)(3). Aware that this liability can sometimes cause inequitable and harsh results to innocent spouses, Congress set out a means to permit an innocent spouse to obtain relief from this liability. Section 6015(b) of the Tax Code provides relief from tax liability for an individual, who was a joint filer but did not know or have reason to know that there was an understatement on the tax return. Section 6015(c) provides similar relief when the joint filers are legally separated or no longer married unless the IRS shows that the would-be innocent spouse had "actual knowledge of any item giving rise to the deficiency." I.R.C. § 6015(c)(3)(C). The relief available under both § 6015(b) and § 6015(c) must be sought within two years of the IRS's first collection activity. *See* I.R.C. §§ 6015(b)(1)(E), 6015(c)(3)(B). If relief is not available under subsection (b) or subsection (c), a joint taxpayer may also seek equitable

relief under § 6015(f), which authorizes the Secretary of the Treasury to grant the innocent spouse relief from any unpaid tax or any deficiency when holding otherwise would be "inequitable." Subsection (f) contains no limitations period within which to seek the equitable relief.

In regulations implementing § 6015, the Secretary promulgated Treasury Regulation § 1.6015-5(b)(1), which imposes a two-year limitations period in which relief requested under 6015(f) must be sought. The regulation provides in part, "[A] requesting spouse must file Form 8857 or other similar statement with the Internal Revenue Service no later than two years from the date of the first collection activity against the requesting spouse . . . with respect to the joint tax liability." 26 C.F.R. § 1.6015-5(b)(1).

Octavia Jones contends that Treasury Regulation § 1.6015-5(b)(1) is invalid for the reasons given by the Tax Court. The Commissioner contends that the regulation fixing a limitations period fills a gap in the Tax Code and is a permissible interpretation of I.R.C. § 6015.

## II

Octavia Jones separated from her husband, Robert Jones, in September 2000, and, under the couple's separation agreement, the couple filed a joint tax return for the year 2000. Robert Jones prepared the return, which claimed a loss from his business and a refund in taxes in the amount of $6,464. After an audit of the return, however, the IRS determined that there were errors in the return and, on July 25, 2002, assessed a deficiency in the amount of $7,630, including interest. To pay the deficiency, Robert Jones entered into an installment agreement with the IRS. But when he filed for bankruptcy in April 2005, he defaulted, and the IRS began collection efforts.

The IRS sent both Robert and Octavia Jones a notice of default on August 1, 2005, notifying them of its intent to levy

on their property. In January 2008, Octavia Jones' bank forwarded to her an IRS levy on her account, and, shortly thereafter on January 31, 2008, she filed Form 8857, requesting innocent spouse relief under I.R.C. § 6015(f). At the time, the outstanding balance on the couple's tax liability had increased to $11,957 by reason of interest and penalties. The IRS denied Octavia Jones' request for innocent spouse relief by letter dated April 21, 2008, advising her that her request was made beyond the two-year limitations period contained in Treasury Regulation § 1.6015-5(b)(1). Octavia Jones then filed this petition for relief with the Tax Court, in July 2008.

The Commissioner and Jones stipulated that Jones would be entitled to equitable innocent spouse relief but for the fact that she made her request more than two years after the IRS's first collection activities. On cross-motions for summary judgment, the Tax Court, by judgment dated May 28, 2010, denied the Commissioner's motion for summary judgment and granted Jones' motion, holding that the Treasury Regulation was invalid for the reasons it gave in *Lantz v. Commissioner*, 132 T.C. 131 (2009) [hereafter *Lantz I*], even though that decision was reversed by the Seventh Circuit in *Lantz v. Commissioner*, 607 F.3d 479 (7th Cir. 2010) [hereafter *Lantz II*].

The Commissioner appeals the Tax Court's judgment, requesting that we join the Seventh Circuit's decision in *Lantz II* and the Third Circuit's subsequent decision in *Mannella v. Commissioner*, 631 F.3d 115 (3d Cir. 2011), which followed *Lantz II* in holding the regulation valid. The sole question presented is whether I.R.C. § 6015 is ambiguous and the Secretary acted reasonably in promulgating Treasury Regulation § 1.6015-5(b)(1), fixing a two-year limitations period for seeking equitable innocent spouse relief under I.R.C. § 6015(f).

### III

The Tax Court's judgment is based solely on the reasons it gave in *Lantz I*, where it found Treasury Regulation 1.6015-

5(b)(1) invalid, concluding that Congress, in failing to provide a limitations period for relief under § 6015(f), communicated unambiguously its intent not to provide a limitations period for such relief, and therefore any regulation providing one was inconsistent with Congress' intent. In *Lantz I*, the Tax Court explained:

> We find that by explicitly creating a 2-year limitation in subsections (b) and (c) but not subsection (f), Congress has "spoken" by its audible silence. Because the regulation imposes a limitation that Congress explicitly incorporated into subsections (b) and (c) but omitted from subsection (f), it fails the first prong of *Chevron*.
>
> * * *
>
> Had Congress intended a 2-year period of limitations for equitable relief, then of course it could have easily included in subsection (f) what it included in subsections (b) and (c). However, Congress imposed no deadline, yet the Secretary prescribed a period of limitations identical to the limitations Congress imposed under § 6015(b) and (c).

*Lantz I*, 132 T.C. at 139-40.

Octavia Jones contends that the Tax Court was correct. She argues that a straightforward reading of I.R.C. § 6015 indicates that Congress deliberately omitted a time restriction for seeking equitable relief under § 6015(f). She states, "Unlike § 6015(b) and (c), § 6015(f) does not set forth any mechanical requirement for relief. Rather § 6015(f) requires the Commissioner to balance *all* the facts and circumstances and grant relief, if appropriate." She relies on the general proposition that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally

and purposely in the disparate inclusion or exclusion," *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citations omitted). She reasons that congressional intent so ascertained is law that must be given effect. *See Chevron*, 467 U.S. at 842-43.

Arguing that the Tax Court erred, the Commissioner contends that § 6015 is ambiguous because silence is inherently ambiguous and that when Congress gave the Secretary discretion under § 6015(f) to grant relief as a matter of equity, it also directed the Secretary to adopt, through regulations, procedural requirements, including time limitations, governing the presentment of § 6015(f) claims. The Commissioner also argues more broadly that when Congress specifies no limitation period for making a claim, the administering agency or the courts are traditionally free to supply one.

The parties agree that the *Chevron* two-step analysis applies in resolving the question here.

> First, we must determine whether the statute directly addresses the precise issue before us. "If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the Agency, must give effect to the unambiguously expressed intent of Congress." Second, if the statute is silent or ambiguous in expressing congressional intent, we must determine whether the Agency's interpretation is based on a "permissible construction of the statute."

*Snowa v. Commissioner*, 123 F.3d 190, 195-96 (4th Cir. 1997) (quoting *Chevron*, 467 U.S. at 842-43).

Because the meaning of § 6015(f) varies depending on the interpretative principle that is applied, we conclude that the statute is ambiguous and therefore that the analysis does not end at *Chevron* step one. Under one interpretative principle, courts have concluded that when a statute omits a limitations

period, as is the case here, a court or an administrative agency is free to fill the gap and supply one. As the Second Circuit explained:

> Congress often creates substantive rights without addressing procedural aspects of their enforcement. Significantly, Congress frequently fails to address the issue of a limitations period even where very important federal rights are involved. . . . Almost all substantive rights are subject to limitations periods, and the Supreme Court has many times recognized the important function they play in an efficient judicial system.

*Withey v. Perales*, 920 F.2d 156, 159 (2d Cir. 1990) (upholding a federal agency's imposition of a limitations period through a regulation when none was present in the statute); *see also Lantz II*, 607 F.3d at 482 ("Agencies . . . being legislative as well as adjudicatory bodies, are not bashful about making up their own deadlines. And because they are not bashful, and because it is as likely that Congress knows this as that it knows that courts like to borrow a statute of limitations when Congress doesn't specify one, the fact that Congress designated a deadline in two provisions of the same statute and not in a third is not a compelling argument that Congress meant to preclude the Treasury Department from imposing a deadline applicable to cases governed by that third provision").

Under another interpretive principle, courts have concluded that when a statute includes particular language in one section but omits it in another, a court can assume, at least as a general matter, that the omission was deliberate. *See Russello*, 464 U.S. at 23. As we have stated, "The omission by Congress of language in one section of a statute that is included in another section of the same statute generally reflects Congress's intentional and purposeful exclusion in the former section." *NISH v. Cohen*, 247 F.3d 197, 203-04 (4th Cir. 2001).

In this case, however, the second interpretive principle might be less relevant because of the differing nature of the provisions juxtapositioned in § 6015. Subsections (b) and (c) mandate that innocent spouse relief "shall" be given in the circumstances provided in those sections. *See* I.R.C. § 6015(b), (c). In contrast, subsection (f) affords relief on a discretionary basis, stating that "the Secretary *may* relieve" an innocent spouse from liability. I.R.C. § 6015(f) (emphasis added). And the Secretary's discretion is reinforced by the authorization that the Secretary may grant relief "[u]nder procedures prescribed by the Secretary." *Id.* While it may be debatable whether a limitations period is, as a general matter, procedural, in § 6015 Congress certainly referred to the limitations periods in subsections (b) and (c) as procedural. This distinction between the mandatory relief available in subsections (b) and (c) and the discretionary relief that may be granted by the Secretary in subsection (f) under procedures adopted by the Secretary tends to support application of the *Withey* interpretive principle here rather than the *Russello* principle.

In other words, although the absence of a limitations period in subsection (f) and the presence of one in subsections (b) and (c) could suggest that Congress intended no limitations period for subsection (f), it could also suggest that, with respect to subsection (f), Congress intended to leave a gap so that the Secretary could adopt a limitations period as a procedure by which the Secretary would administer his discretionary authority under subsection (f). This might be especially so since subsection (f) begins, "Under procedures prescribed by the Secretary . . . ." To be sure, similar language is also included in subsection (b), but that subsection is not discretionary and, at any rate, includes a limitations period.

At bottom, we cannot say that Congress' intent is "unambiguously expressed" as to whether there should be no limitations period in (f) or whether the Secretary should prescribe one as part of the procedures for administering discretionary relief. *See Chevron*, 467 U.S. at 842-43. Because § 6015(f) is

sufficiently ambiguous to leave room for agency interpreta-
tion, we reach the *Chevron* step-two question of whether the
Secretary's interpretation is a "permissible construction of the
statute." *Chevron*, 467 U.S. at 842-43.

Contending that Regulation § 1.6015-5(b)(1) is not a per-
missible interpretation of I.R.C. § 6015(f), Octavia Jones
focuses mainly on the fact that the Secretary's interpretation
unnecessarily and inappropriately narrows the relief that Con-
gress intended in § 6015(f) for equitable innocent spouse
relief. She argues that because subsection (f) grants broad
equitable discretion to the Secretary, the discretion was
undoubtedly intended to be exercised on a case-by-case basis,
not through narrow, rigid rules such as a fixed limitations
period. Moreover, she maintains, the language of § 6015(f)
reveals Congress' intent to broaden the mandatory relief for
innocent spouses established in subsections (b) and (c),
including the time restrictions included in those subsections.
By establishing a hard and fast two-year limitations period for
§ 6015(f) relief, Jones argues, the Secretary has unreasonably
and therefore invalidly narrowed the equitable authority
granted by Congress to the Secretary.

The Commissioner contends that the promulgation of a lim-
itations period for § 6015(f) was a permissible way to resolve
the ambiguity in § 6015, which otherwise could cause confu-
sion and inconsistency. While the Commissioner allows that
Jones' arguments can legitimately be made, he notes simply
that they are among the several policy arguments properly
considered and rejected by the Secretary in adopting a two-
year limitations period.

The simple question at this stage of the *Chevron* analysis
is only whether the Secretary's adoption of the limitations
period was a reasonable approach to resolving the statute's
ambiguity, and we need not decide whether the Secretary's
chosen approach is the best one. *See Chevron*, 467 U.S. at 843

n.11. For if the Secretary's interpretation is reasonable, we will defer to the Secretary. *Id.* at 844.

We hold first that it was not unreasonable for the Secretary to conclude that leaving § 6015(f) with no limitations period could create more uncertainty and uneven results than including one. One decisionmaker applying § 6015(f) might never bar a claim for relief, no matter how remote in time it is filed, while another might adopt a limitations period from an analogous statute, and yet another might apply the equitable doctrine of laches. To regularize these differing approaches would undoubtedly be a reasonable endeavor, as the Supreme Court recognized in *Lopez v. Davis*, 531 U.S. 230 (2001). In *Lopez*, the Court observed:

> "[E]ven if a statutory scheme requires individualized determinations," which this scheme does not, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." . . . [C]ase-by-case decisionmaking in thousands of cases each year could invite favoritism, disunity, and inconsistency. The [agency] is not required continually to revisit "issues that may be established fairly and efficiently in a single rulemaking proceeding."

*Id.* at 244-45 (internal citations omitted).

And if it were reasonable to impose a limitations period, as opposed to adopting none, then two years is certainly as reasonable as others that might be chosen. Relief under § 6015(b) and (c) must be sought within two years or be barred. If the limitations period selected for subsection (f) were longer than two years, then the subsection (f) limitations period would undermine to some extent the two-year limitations periods in subsections (b) and (c), as the broader relief

available under subsection (f) could be sought after limitations periods of subsections (b) and (c) had expired.

Limitations periods inherently involve some arbitrary line-drawing, and we must be hesitant in second-guessing an agency's judgment concerning the selection of a specific limitations period. Line-drawing undoubtedly provides some administrative benefit, and it was reasonable in this case for the Secretary to have drawn that line at two years, which makes the relief obtainable under subsection (f) parallel with the narrower relief obtainable under subsections (b) and (c).

In short, we conclude that the Secretary's adoption of a two-year time period for requesting relief under § 6015(f) is a reasonable approach to filling the gap left in § 6015. Because § 6015(f) is ambiguous as to an appropriate limitations period and Regulation § 1.6015-5(b)(1) is not "arbitrary, capricious, or manifestly contrary to the statute," *Chevron*, 467 U.S. at 844, we conclude that it is a valid regulation.

In finding the regulation valid, we join the only other courts of appeals to have considered the issue. *Mannella*, 631 F.3d 115 (3d Cir. 2011); *Lantz II*, 607 F.3d 479 (7th Cir. 2010).

IV

Jones contends alternatively that even if Treasury Regulation § 1.6015-5(b) is a valid interpretation of I.R.C. § 6015, she should nonetheless be allowed an extension under Treasury Regulation § 301.9100-3. That regulation provides that the IRS can grant an extension of time to a taxpayer for "regulatory elections . . . when the taxpayer provides the evidence . . . to establish to the satisfaction of the Commissioner that the taxpayer acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the Government." 26 C.F.R. § 301.9100-3(a).

The Commissioner contends that Treasury Regulation § 301.9100-3 is not applicable to the circumstances of this

case and that the Tax Court in *Lantz I* rejected its application to similar circumstances. *See Lantz I*, 132 T.C. at 144 n.10.

Jones made a request for extension under Treasury Regulation § 301.9100-3 before the Tax Court and the Commissioner opposed it there also. The parties agreed by stipulation, however, that they would submit to the Tax Court the single issue of whether Treasury Regulation § 1.6015-5(b) is valid. In their stipulation, they agreed that if the regulation were to be found valid, the issue of whether Jones was entitled to an extension would be submitted to the Tax Court.

Agreeing to the procedure stipulated to by the parties, the Tax Court called for cross-motions for summary judgment on the validity of Tax Regulation § 1.6015-5(b), and the Tax Court decided only that issue.

In view of the fact that we now have ruled that Treasury Regulation § 1.6015-5(b) is valid, we remand the case to the Tax Court for determining whether Jones was entitled to an extension under Treasury Regulation § 301.9100-3, as she requested.

V

Finally, Jones argues, for the first time on appeal, that she should be relieved from her late request for innocent spouse relief under the doctrine of equitable tolling. Because she did not raise this issue before the Tax Court, however, it is waived, and we will not address it now. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (holding that issues raised for the first time on appeal are waived absent exceptional circumstances).

* * *

For the reasons given, the judgment of the Tax Court is reversed, and the case is remanded for further proceedings.

*REVERSED AND REMANDED*