OPINION Goeke, Judge: This case is before the Court on petitioner’s request for relief under section 6015(f).[1] We have jurisdiction under section 6015(e). The specific issue is whether petitioner is entitled to equitable relief under section 6015(f), notwithstanding her failure to request such relief before the 2-year deadline imposed by section 1.6015-5(b)(1), Income Tax Regs. Background The facts have been stipulated and are so found. At the time of filing the petition, petitioner resided in Cincinnati, Ohio. Petitioner and Etheridge Hall (Mr. Hall) were married on October 9, 1965. Petitioner and Mr. Hall filed joint Federal income tax returns for the tax years 1998 and 2001 (the years in issue). For the year 1998 petitioner and Mr. Hall included a payment with their return but did not pay the full amount due. For the year 2001 petitioner and Mr. Hall filed a return but did not pay any of the amount due. However, since the filing of their 2001 return, petitioner and Mr. Hall made several payments for the tax year 2001, and the Internal Revenue Service (IRS) applied several credits to their account. On April 17, 2003, petitioner and Mr. Hall divorced. Pursuant to their divorce decree, Mr. Hall had a legal obligation to pay his and petitioner’s joint income tax liabilities. However, petitioner did not know at the time she filed her joint returns for the years at issue whether Mr. Hall would pay the tax due for said years. On July 6, 2004, respondent initiated collection activity against petitioner and Mr. Hall’s outstanding tax liabilities for the years 1998 and 2001 by issuing an intent to levy notice. On August 1, 2008, petitioner signed and submitted to respondent Form 8857, Request for Innocent Spouse Relief, for her 1998 and 2001 tax years. On August 14, 2008, the IRS issued a preliminary determination denying petitioner relief under section 6015(f) for the years in issue because petitioner’s claim was not filed within the 2-year period. On or about August 22, 2008, petitioner filed a Form 12509, Statement of Disagreement, protesting the IRS’ denial of innocent spouse relief and stating that she was not aware that collection activity had been initiated against her. In addition, petitioner stated in her Form 12509 that the “statements” she had received “always had on the statement * * * [that] I had two years to call. * * * If your [sic] telling me I [was] suppose to do this last year, I’m still receiving statements saying I still have two years. Could you explain this please.” By letter dated September 10, 2008, respondent’s Appeals Office acknowledged receipt of petitioner’s case for consideration and informed petitioner of the Appeals officer assigned to it. On November 17, 2008, the Appeals officer held a conference with petitioner at which she was informed that the IRS could not grant her relief because she had not timely filed her request. The Appeals officer explained that the IRS had issued a collection notice to her on July 6, 2004, and petitioner was required to file a Form 8857 by July 6, 2006; the Form 8857 was received on July 31, 2008, making the request untimely. On November 20, 2008, respondent issued a final Appeals determination denying petitioner relief from joint and several liability under section 6015(f) for the years at issue. On December 22, 2008, petitioner timely petitioned this Court, contesting respondent’s denial of relief. On November 5, 2009, respondent sent petitioner’s case to the Cincinnati Centralized Innocent Spouse Operations Unit to reconsider the merits of her request. The result was again denial of relief. However, in a stipulation of settled issues, dated June 1, 2010, respondent agreed that “petitioner would be entitled to equitable relief on the merits” if her request had been timely. Petitioner agreed in the same stipulation of settled issues that she had submitted her request more than 2 years after collection activities had commenced. Discussion This case presents the same issue as this Court’s Opinion in Lantz v. Commissioner, 132 T.C. 131 (2009), revd. 607 F.3d 479 (7th Cir. 2010). In that case this Court held that the 2-year limitation imposed by section 1.6015-5(b)(1), Income Tax Regs., is an invalid interpretation of section 6015(f). The Court of Appeals for the Seventh Circuit reversed this holding, finding that the regulation was within the Secretary’s discretion to prescribe procedures for the application of section 6015(f). Appeal of this case would normally lie to the Court of Appeals for the Sixth Circuit, so the rule of deference is not applicable. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). However, given the reversal of Lantz, it is appropriate that this Court revisit the issue. I. Seventh Circuit Analysis The Court of Appeals for the Seventh Circuit in Lantz held that “audible silence” was not a guide to congressional meaning because there was nothing unusual in the fact that Congress chose not to include a statute of limitations in section 6015(f). The Court of Appeals noted that courts often borrow statutes of limitations from other laws and that Congress was aware that agencies often make up their own deadlines through regulations. The Court of Appeals also held that while the doctrine of laches might substitute for the lack of a statute of limitations in a situation applying equitable principles, it cannot do so for section 6015(f). The Court of Appeals reasoned that if section 6015(f) has no strict deadline, “the two-year deadlines in subsections (b) and (c) will be set largely at naught because the substantive criteria of those sections are virtually the same as those of (f).” Lantz v. Commissioner, 607 F.3d at 484. Finally, the Court of Appeals noted that section 6015(f) is a safety valve by which the IRS may grant relief to a taxpayer under regulations prescribed by the Secretary. Because Congress authorized the Secretary to grant discretionary relief under procedures that the Secretary was to devise, the court held that judicial deference to the regulation was required and the Secretary was empowered to set a deadline for applying for section 6015(f) relief. Id. at 486. The analysis by the Court of Appeals concluded with the recognition that the result was “harsh” but suggested Mrs. Lantz might be provided relief under section 6343(a)(1)(D). Id. II. Procedural Rule In Lantz v. Commissioner, 607 F.3d at 483, the Court of Appeals recognized that equity traditionally did not include a strict “statute of limitations”; but as stated previously, the Court of Appeals rejected “laches” as a means to apply section 6015(f). Traditionally, in cases of equity there was no statute of limitations, but delay in filing a claim was considered as a factor in deciding whether equity would be served by granting relief. Id. By adopting a statute of limitations, the Court of Appeals accepted that cases invoking inequitable circumstances will be denied relief without considering the facts and circumstances. The cause of the delay in filing and the circumstances, no matter how extreme, are irrelevant. The Court of Appeals rejected the traditional method to address delay in the equity context because of subsections (b) and (c) of section 6015 and the 2-year limitations provision in those subsections, which it found supports the use of the 2-year standard for subsection (f).[2] The Court of Appeals’ application of the 2-year limits in subsections (b) and (c) makes subsection (f) ineffective in situations where an innocent spouse is unaware of the need to or unable to contact the IRS for some of the very reasons that Congress considered in enacting section 6015. For example, a spouse is sometimes subject to abuse by a partner. The abuse can take many forms. Where a spouse is prevented from acting by fear, intimidation, or fraud, an administrative procedural hurdle would eliminate consideration of relief by the IRS. The Secretary did not allow any exception even for extreme cases, but rather adopted a strict time bar that requires the IRS to deny relief without any consideration of the facts and circumstances. See sec. 1.6015-5(b)(1), Income Tax Regs. In our view, a regulation which rejects claims for relief without considering the facts and circumstances is contrary to the specific statutory requirement that all the facts and circumstances be taken into account. Lantz v. Commissioner, 132 T.C. at 147. We concluded that the regulation, which bars relief from inequity solely upon the ground that it was requested beyond a specified period, failed to consider all the facts and circumstances. Id. at 150. Respondent contends that this is a procedural rule clearly within the Secretary’s discretion. However, a time bar is not simply a procedural rule. In the case of equity, it has the substantive effect of making one circumstance, the time of the claim, the only relevant factor. The statute requires consideration of all facts and circumstances to decide whether there is inequity. Sec. 6015(f). Specifying a period not provided in the statute overrides all the other potential causes of inequity and is fundamentally inconsistent with the language and purpose of the statute. III. Subsection (f) in the Context of Subsections (b) and (c) The relationship of subsections (b) and (c) to subsection (f) is fundamental to the issue before us. The Court of Appeals found that without a 2-year statute of limitations for subsection (f), the limitations for subsections (b) and (c) are made ineffective. Lantz v. Commissioner, 607 F.3d at 484. Therefore, the Court of Appeals held that silence in subsection (f) did not support a different rule but rather that the context of subsection (f) after subsections (b) and (c) required the same rule. Id. at 484-485. We believe the Court of Appeals’ opinion overlooks the very specific and different purpose of subsection (f).[3] As applied by the IRS in Rev. Proc. 2003-61, 2003-2 C.B. 296, subsection (f) requires a decision about whether collecting a joint liability yields an inequitable result. The revenue procedure and this Court have consistently looked beyond the taxable year at issue to apply subsection (f). The facts relevant to subsections (b) and (c) are primarily those of the taxable year in issue and whether the party claiming relief is liable for a joint deficiency. In the case of subsection (f), relief from the deficiency under subsections (b) and (c) is not available and underpaid taxes already assessed on the basis of the joint return as filed are possibly subject to relief. Rev. Proc. 2003-61, secs. 4.01(2), 4.02, 4.03, 2003-2 C.B. at 297-298. While facts from the year the return was filed may be relevant in applying subsection (f), those facts are not exclusive. The application of subsection (f) also depends on current economic hardship and marital circumstances after the year of the joint liability. Id. sec. 4.03(2)(a)(i) and (ii), 2003-2 C.B. at 298. Such circumstances are to be weighed together with the events during the year in question, and no one factor is determinative. Id. The consideration of contemporaneous circumstances distinguishes subsection (f) analysis from the taxable year factual analysis required under subsections (b) and (c). IV. Deference The IRS, faced with serious budget constraints, must handle many claims for relief, and we appreciate that some recognition of the timeliness of claims is necessary. But a refusal to consider or outline exceptional circumstances runs squarely contrary to the statutory mandate to prevent inequity. The need for expediency and the concern with drafting a rule that reconciles subsections (b), (c), and (f) of section 6015 effectively are not valid reasons for the Secretary to ignore the statutory mandate to prevent inequity. The Secretary has wide latitude to implement section 6015(f) but does not have carte blanche to ignore the purpose and defeat the application of the section for a substantial number of otherwise deserving taxpayers. The Court of Appeals in Lantz v. Commissioner, 607 F.3d at 485, cites Lopez v. Davis, 531 U.S. 230, 238 (2001), and asks the rhetorical question: Since the government can refuse to grant equitable relief to someone who meets the statutory criteria and applies within two years of the first collection action, why can’t it decide to deny relief to a class of applicants defined as those who waited too long? * * * If we can suggest an answer, it would be to consider two features of section 6015 (e) and (f). Section 6015(f) imposes a requirement that “all the facts and circumstances” be considered in a determination of whether the collection of the joint tax liability will result in inequity, and section 6015(e) provides for judicial review of that determination as a matter of right. The Secretary has written a regulation that eliminates consideration of all the facts and circumstances. There is no doubt there will be situations where denial of an untimely request will be inequitable because the party seeking relief was denied access to the necessary information by a malicious or deceitful spouse. As indicated, the IRS recognizes post-taxable-year facts are relevant under subsection (f) that are not otherwise relevant under subsections (b) and (c). This recognition establishes that insisting on a statute of limitations in subsection (f) based upon subsections (b) and (c) is a false premise. Congress intended a broader role for subsection (f), and the IRS has long recognized this in revenue procedures. The Court of Appeals’ question and later discussion recognized that harsh and inequitable results are likely-under Lantz. We simply disagree that such results are allowable within a reasonable interpretation of the statute and the related congressional intent. V. Standard of Review Applying the law of the Court of Appeals for the Sixth Circuit, to which an appeal in this case would lie, we must apply the analysis of Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-843 (1984), to the regulation at issue. Hosp. Corp. of Am. & Subs. v. Commissioner, 348 F.3d 136, 140 (6th Cir. 2003), affg. 107 T.C. 73 and 107 T.C. 116 (1996). For the reasons we stated in Lantz v. Commissioner, 132 T.C. at 137, we hold that section 1.6015-5(b)(1), Income Tax Regs., fails both prongs of the Chevron test. VI. Section 6343 With all due respect to the Court of Appeals for the Seventh Circuit’s reference to section 6343(a)(1)(D), that section was enacted before section 6015(f); and if Congress had found it sufficient, presumably section 6015(f) would not have been enacted. One difference is that section 6343(a)(1)(D) may apply if economic hardship is present; section 6015(f) may apply on more general equitable grounds. In addition, there is a practical problem: the Internal Revenue Manual provides little direction to IRS employees regarding application of economic hardship to case decisions. National Taxpayer Advocate, 2008 Annual Report to Congress (Vol. 1) 21-22 (2008). Additionally, in many cases the IRS does not consider the loss of a taxpayer’s home and retirement assets an economic hardship. National Taxpayer Advocate, Report to Congress, Fiscal Year 2009 Objectives, at xxxvi (2008). VII. Conclusion Respondent’s practice in this and similar cases has been to agree that the taxpayer is entitled to relief if the regulation is deemed invalid. Respondent has chosen not to inquire whether petitioner’s delay was not excusable and whether the delay is a factor favoring the denial of relief based upon a facts and circumstances test. For the reasons explained hereinbefore, we determine that, Decision will be entered for petitioner. Reviewed by the Court. Colvin, Cohen, Wells, Marvel, Wherry, Kroupa, and Paris, JJ., agree with this majority opinion. Unless otherwise noted, all section references are to the Internal Revenue Code in effect at all relevant times. Sec. 6015(b), (c), and (f) provides as follows: SEC. 6015(b). PROCEDURES FOR RELIEF FROM LIABILITY APPLICABLE TO ALL JOINT FILERS.— (1) In General. — Under procedures prescribed by the Secretary, if— (A) a joint return has been made for a taxable year; (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return; (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement; (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement. (2) APPORTIONMENT OP RELIEF. — If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know. (3) Understatement. — For purposes of this subsection, the term “understatement” has the meaning given to such term by section 6662(d)(2)(A). SEC. 6015(c). Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.— (1) In GENERAL. — Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual’s liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d). (2) Burden OF PROOF. — Except as provided in individual subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this subsection shall have the burden of proof with respect to establishing the portion of any deficiency allocable to such individual. (3) Election.— (A) Individuals eligible to make election.— (i) In GENERAL. — An individual shall only be eligible to elect the application of this subsection if— (I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or (II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed. (ii) Certain taxpayers ineligible TO ELECT. — If the Secretary demonstrates that assets were transferred between individuals filing a joint return as part of a fraudulent scheme by such individuals, an election under this subsection by either individual shall be invalid (and section 6013(d)(3) shall apply to the joint return). (B) Time for election. — An election under this subsection for any taxable year may be made at any time after a deficiency for such year is asserted but not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election. (C) Election not valid with respect to certain deficiencies. — If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress. (4) Liability increased by reason of transfers of property to avoid tax.— (A) In GENERAL. — Notwithstanding any other provision of this subsection, the portion of the deficiency for which the individual electing the application of this subsection is liable (without regard to this paragraph) shall be increased by the value of any disqualified asset transferred to the individual. (B) Disqualified asset. — For purposes of this paragraph— (i) In general. — The term “disqualified asset” means any property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax. (ii) Presumption.— (I) In general. — For purposes of clause (i), except as provided in subclause (II), any transfer which is made after the date which is 1 year before the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or payment of tax. (II) Exceptions. — Subclause (I) shall not apply to any transfer pursuant to a decree of divorce or separate maintenance or a written instrument incident to such a decree or to any transfer which an individual establishes did not have as its principal purpose the avoidance of tax or payment of tax. SEC. 6015(f). Equitable Relief. — Under procedures prescribed by the Secretary, if— (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and (2) relief is not available to such individual under subsection (b) or (c), the Secretary may relieve such individual of such liability. In an article addressing the question whether the 2-year rule should apply to sec. 6015(f), Professor Bryan T. Camp argues that subsec. (f) has a different role from that of subsecs, (b) and (c) and that application of the 2-year rule from subsecs, (b) and (c) to subsec. (f) is not appropriate. Camp, “Interpreting Statutory Silence”, 128 Tax Notes 501 (Aug. 2, 2010).