T.C. Summary Opinion 2011-57

UNITED STATES TAX COURT

JOHNA MAUDI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31120-08S.              Filed May 10, 2011.

<u>George L. Willis</u>, for petitioner.

<u>Mayah Solh</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This proceeding was commenced under section 6015 for review of respondent's determination that petitioner is not entitled to relief from joint and several liability with respect to an understatement of Federal income tax reported on a joint Federal income tax return filed for 2002.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time the petition was filed.

Petitioner was born in Tehran, Iran. Petitioner was educated in Iran before moving to Germany in the 1980s. Petitioner moved to the United States in the early 1990s. In October 1994 petitioner was working as a flight attendant in California when she married Saied Mahammadi (Mr. Mahammadi), also a native Iranian. At some later time petitioner began working entry-level jobs at businesses within the Persian community to supplement the family income. In March 2008 petitioner separated from Mr. Mahammadi and initiated divorce proceedings. In January 2009 petitioner ceased working and began receiving unemployment compensation. As a result of her financial difficulty,

petitioner began residing with her daughter. Although petitioner has lived in the United States since the early 1990s, her understanding and use of English is limited.

During the marriage, Mr. Mahammadi was self-employed as a singer and entertainer. He performed at weddings and similar events in various Persian communities. Mr. Mahammadi sometimes traveled for his business. Petitioner had no role in Mr. Mahammadi's business, and he did not share information about his business activity with petitioner. At times, Mr. Mahammadi's business income from this activity was insufficient to support the family.

Throughout the marriage, petitioner and Mr. Mahammadi maintained separate bank accounts, and petitioner had no access to Mr. Mahammadi's accounts or business records. Household bills were paid first out of Mr. Mahammadi's account. Petitioner paid bills when Mr. Mahammadi indicated he did not have sufficient funds.

Mr. Mahammadi took responsibility for having the joint Federal income tax return prepared for each year. In early 2003 petitioner provided Mr. Mahammadi with her 2002 Form W-2, Wage and Tax Statement, which he then took to the tax preparer, along with his own records. When Mr. Mahammadi presented the completed return to petitioner for her signature, she reviewed the wage and

withholding figures against her Form W-2 and signed the return. The return showed a refund of $326.

At a date not specified in the record, petitioner was first alerted to a possible problem with the 2002 return when she and Mr. Mahammadi received a letter from the Internal Revenue Service (IRS) notifying them that the return had been selected for examination. Petitioner spoke to Mr. Mahammadi at that time, and he told her he would contact the return preparer and deal with the examination since it concerned his business.

Ultimately, the IRS issued a notice of deficiency for 2002, disallowing Mr. Mahammadi's claimed business expense deductions and making computational adjustments to his self-employment tax. Neither petitioner nor Mr. Mahammadi filed a petition to dispute the notice of deficiency, and the deficiency was assessed on May 16, 2005. Throughout the remainder of the marriage, Mr. Mahammadi periodically showed petitioner checks he was about to mail to the IRS to demonstrate to her he was paying the amounts due.

On October 28, 2005, and March 24, 2006, the IRS issued Notices of Intent to Levy and Your Right to a Hearing (CDP notices). Petitioner received the first CDP notice on January 10, 2006, but did not receive the second CDP notice. Neither petitioner nor Mr. Mahammadi requested a CDP hearing.

In January 2008 petitioner's wages were garnished. On May 28, 2008, the IRS received petitioner's Form 8857, Request for Innocent Spouse Relief. The IRS denied petitioner's request for relief. On July 10, 2008, petitioner mailed to the IRS a Form 12509, Statement of Disagreement, disputing the IRS' determination to deny petitioner's request for relief. On September 25, 2008, the IRS issued a final Appeals determination denying petitioner relief because her request was filed more than 2 years after the IRS began collection activity.[1] Petitioner timely filed a petition to dispute the denial of her request for relief.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

---

[1]On Aug. 3, 2009, respondent filed a status report informing the Court that respondent had reconsidered petitioner's claim on the merits and determined that petitioner was not entitled to such relief.

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under either section 6015(b) or (c),[2] the taxpayer may seek equitable relief under section 6015(f). The Secretary has discretion to grant equitable relief to a spouse who filed a joint return with an unpaid liability or to one who has a deficiency (or any portion of either). Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo. Porter v. Commissioner, 132 T.C. 203 (2009).

As directed by section 6015(f), the Commissioner has prescribed procedures for determining whether a spouse qualifies for relief under that subsection. The applicable provisions are found in Rev. Proc. 2003-61, 2003-2 C.B. 296.

The revenue procedure sets forth threshold requirements before the Commissioner will consider a request for relief under

_____

[2]The parties have agreed that petitioner is not entitled to relief under sec. 6015(b) or (c).

section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.  All requesting spouses must meet seven threshold requirements:  (i) The requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the IRS' first collection activity after July 22, 1998, with respect to the requesting spouse; (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) absent enumerated exceptions, the income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint return.  This Court employs those factors when reviewing the Commissioner's denial.  Washington v. Commissioner, 120 T.C. 137, 147-152 (2003); see also Schultz v. Commissioner, T.C. Memo. 2010-233.

Respondent asserts that petitioner fails requirement (iii), above but otherwise satisfies the threshold requirements.  In Lantz v. Commissioner, 132 T.C. 131 (2009), this Court invalidated section 1.6015-5(b)(1), Income Tax Regs., which imposed the requirement that relief be requested within 2 years

of the beginning of collection activities by the IRS.  However, on June 8, 2010, our decision in that case was reversed by the Court of Appeals for the Seventh Circuit.  Lantz v. Commissioner, 607 F.3d 479 (7th Cir. 2010).  Nevertheless, at this time in circuits other than the Third[3] and Seventh Circuits, Lantz v. Commissioner, 132 T.C. 131 (2009), remains the law of this Court. Pullins v. Commissioner, 136 T.C. ___ (2011); Hall v. Commissioner, 135 T.C. 374 (2010); Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971).  As petitioner's case would be appealable to the Court of Appeals for the Ninth Circuit were it not a small tax case, we follow this Court's Lantz, Hall, and Pullins Opinions.  Therefore, we conclude that petitioner has satisfied the threshold requirements.

Where the requesting spouse satisfies the threshold requirements of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth circumstances in which relief will ordinarily be granted under section 6015(f) with respect to an underpayment of a properly reported liability. However, the liability from which petitioner seeks relief is an understatement and not an underpayment of a properly reported

_____

[3]The Court of Appeals for the Third Circuit has recently held the 2-year deadline to be valid.  See Mannella v. Commissioner, 631 F.3d 115 (3d Cir. 2011), revg. 132 T.C. 196 (2009).

liability; therefore Rev. Proc. 2003-61, sec. 4.02, does not apply.

I.   Factors

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.  The Court's analysis with respect to the nonexhaustive list of factors in Rev. Proc. 2003-61, sec. 4.03, is below.

A.   Marital Status

The IRS will take into consideration whether the requesting spouse is divorced or separated (whether legally separated or living apart) from the nonrequesting spouse.[4]  Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.  We look to petitioner's marital status at the time of trial in applying de novo review.  See Wilson v. Commissioner, T.C. Memo. 2010-134. At the time of trial petitioner was divorced.  This factor weighs in favor of relief.  See id.; see also McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief under Rev. Proc. 2003-61, supra).

B.   Economic Hardship

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted.

---

[4]Respondent concedes that petitioner was either separated or divorced at the time of her request for relief.

Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses. Butner v. Commissioner, T.C. Memo. 2007-136.

Petitioner was unemployed at the time of trial and credibly testified that her unemployment compensation would end within 2 to 3 months. Petitioner asserted that she had no income other than unemployment compensation. The bank records reflect that petitioner expended all of her monthly receipts.

In documents relating to the divorce, petitioner listed a car, some household furnishings, and her bank account as assets. There is no evidence that petitioner had any assets other than those items listed in the divorce documents.

At the time of trial petitioner lived with her daughter, who helped to support petitioner. Petitioner provided some evidence as to household expenditures; however, she has not established the amount of household expenses for which she was responsible. We have insufficient information with respect to the precise details of petitioner's living expenses.

We cannot conclude with certainty that petitioner will be unable to pay reasonable living expenses if the tax is collected. We find generally that petitioner was in a precarious financial situation at the time of trial. Petitioner had been unemployed

for more than a year at the time of trial, had no savings, and maintained a low standard of living by residing with her daughter and sharing expenses. We conclude the economic hardship factor is neutral. See Washington v. Commissioner, 120 T.C. at 149-150; see also Bozick v. Commissioner, T.C. Memo. 2010-61.

    C.    Knowledge or Reason To Know

The IRS will also consider whether the requesting spouse did not know or had no reason to know of the item that gave rise to the deficiency. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B), 2003-2 C.B. at 298. As is relevant here, the IRS will consider any deceit or evasiveness of the nonrequesting spouse, the requesting spouse's involvement in the household's finances, and any lavish or unusual expenditures compared with past spending levels in determining whether the requesting spouse had reason to know of the items giving rise to the liability. Id. sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298.

As previously stated, petitioner had no role in Mr. Mahammadi's business or its finances. Petitioner's role in the household finances was related only to payment of some of the bills. Petitioner did not have a joint account with Mr. Mahammadi or knowledge of Mr. Mahammadi's income. Petitioner knew Mr. Mahammadi did not consistently have sufficient business income to pay household expenses. Respondent has not alleged

that petitioner and Mr. Mahammadi made any lavish or unusual
expenditures.

A taxpayer who signs a return is generally charged with
constructive knowledge of its contents. Hayman v. Commissioner,
992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228.
In establishing that she had no reason to know, the
taxpayer must show that she was unaware of the circumstances that
gave rise to the error and not merely unaware of the tax
consequences. Bokum v. Commissioner, 94 T.C. 126, 145-146
(1990), affd. 992 F.2d 1132 (11th Cir. 1993); Purcell v.
Commissioner, 86 T.C. 228, 237-238 (1986), affd. 826 F.2d 470,
473-474 (6th Cir. 1987).

A cursory review of the return would have revealed Mr.
Mahammadi's reported gross receipts and claimed business expense
deductions. However, a review of these items on the return would
not necessarily have revealed that Mr. Mahammadi's claimed
business expense deductions were overstated. Mr. Mahammadi did
not share with petitioner any information about his business
activity, and she had no knowledge or reason to know of the
actual amounts of business expenses Mr. Mahammadi incurred.

We conclude that petitioner had no knowledge or reason to
know that the business expense deductions claimed were either
erroneous or overstated. See Phemister v. Commissioner, T.C.

Memo. 2009-201. This factor weighs in favor of relief. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B).

D.    Nonrequesting Spouse's Legal Obligation

The IRS will also consider whether the nonrequesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. Id. sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298. Petitioner's divorce decree does not reference any tax liability. This factor is neutral. See Schultz v. Commissioner, T.C. Memo. 2010-233 (failure to show a nonrequesting spouse's legal obligation to pay the tax renders this factor neutral under Rev. Proc. 2003-61, supra).

E.    Significant Benefit

The IRS will consider whether the requesting spouse received significant benefit beyond normal support from the item giving rise to the deficiency. Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

Respondent has not argued and there is no evidence indicating that petitioner received a significant benefit as a result of the items giving rise to the deficiency. Therefore, the Court concludes that this factor weighs in favor of relief. See Magee v. Commissioner, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61, supra).

F.    Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good-faith effort to comply with the Federal tax laws in the succeeding years.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.  Respondent concedes that petitioner has filed all required Federal income tax returns.  However, respondent also asserts that petitioner has not complied with Federal tax laws because there remain outstanding balances for 2003, 2004, and 2008.  The deficiencies for 2003 and 2004 arise partially or wholly out of Mr. Mahammadi's disallowed business expense deductions.  As with the 2002 liability, petitioner first became aware that Mr. Mahammadi had not satisfied the 2003 and 2004 deficiencies when her wages were garnished in 2008.  The IRS granted partial relief under section 6015 for 2003 and 2004, and the balance reflects the amounts for which petitioner was not granted relief.[5]  Petitioner's 2008 Federal income tax return showed tax due, but she made no payment with the return.  As indicated, petitioner's wages were garnished in 2008, and she became unemployed in January 2009.  Petitioner asserts these events caused her to be unable to pay the tax shown on the 2008 return.

_____

[5]The record does not reveal the details of the relief granted to petitioner for 2003 and 2004.

We conclude petitioner has made a good-faith attempt to comply with Federal tax laws. This factor weighs in favor of granting relief. See Hardin v. Commissioner, T.C. Memo. 2009-115.

G.    Abuse

The IRS will also consider whether the nonrequesting spouse abused the requesting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299. The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know. Id.

Petitioner has not alleged that she was abused by Mr. Mahammadi at any time. This is a neutral factor. See id.; see also Magee v. Commissioner, supra.

H.    Mental or Physical Health

The IRS will take into consideration whether the requesting spouse was in poor mental or physical health on the date she signed the return or at the time relief was requested. Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

Petitioner did not claim that she was in poor mental or physical health on the date she signed the return or at the time the relief was requested; therefore, this factor is neutral. See id.; see also Magee v. Commissioner, supra.

II.  Conclusion:  Weight of the Factors

Of the factors listed in Rev. Proc. 2003-61, sec. 4.03, four favor relief (marital status, lack of knowledge or reason to know, good faith effort to comply with tax laws, and lack of significant benefit), none weigh against relief, and four are neutral (economic hardship, nonrequesting spouse's legal obligation, spousal abuse, and mental or physical health).  After considering and weighing all the factors, we find it would be inequitable to hold petitioner liable for the 2002 tax liability which is attributable to Mr. Mahammadi's income.  Accordingly, we hold that petitioner is entitled to relief from joint and several liability for 2002 under section 6015(f).

To reflect the foregoing,

Decision will be entered

for petitioner.