T.C. Summary Opinion 2012-8

UNITED STATES TAX COURT

SHERRY A. WICKMAN, Petitioner, AND
KEVIN WICKMAN, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16451-09S.           Filed January 25, 2012.

Nicole Appleberry and Anna Walker (student), for petitioner.

Kevin Wickman, pro se.

Kevin R. Erskine, for respondent.

## SUMMARY OPINION

ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

By final notice of determination dated April 16, 2009, respondent denied petitioner's claim for relief from joint and several liability with regard to Federal income tax for 2005.  Petitioner timely filed a petition with this Court under section 6015(e) for review of respondent's determination.  Thereafter, petitioner's ex-husband filed a notice to intervene pursuant to Rule 325(b) to oppose any relief to petitioner under section 6015.

The sole issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 2005.  We hold that she is so entitled.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

None of the facts have been stipulated. Petitioner resided in the State of Michigan when the petition was filed.

Petitioner and intervenor were married in 1990. The couple had three children, two boys and one girl.

In November 2004 petitioner separated from intervenor and lived apart from him at all times relevant thereafter. In April 2006 petitioner obtained a divorce from intervenor.

Petitioner and intervenor signed and filed a joint Federal income tax return for 2005 reporting an unpaid tax liability.[2] After the joint tax return was filed, intervenor began making payments toward the reported tax liability. Intervenor earned substantially more wages than petitioner in 2005 and continued to be employed in 2006 when the joint tax return was filed.

The unpaid tax liability reported on the return arose from intervenor's making an early withdrawal from his retirement account in 2005. At the time he withdrew the funds, intervenor faced charges of engaging in criminal sexual

---

[2] Petitioner attempted to communicate with the couple's tax return preparer and explain that she no longer lived with intervenor. Because petitioner is profoundly deaf and speech impaired, however, her attempt resulted in confusion and misunderstanding, which may have ultimately led to petitioner's filing a joint return for 2005.

conduct toward his daughter, and he used the withdrawn funds to pay for his criminal defense.

In 2007 a jury convicted intervenor of the criminal charges, and he was incarcerated by the Michigan Department of Corrections. Thereafter, intervenor ceased making payments toward the tax liability for 2005 that remained outstanding.

In August 2008 the Internal Revenue Service (IRS) received petitioner's Form 8857, Request for Innocent Spouse Relief. The IRS denied petitioner's request for relief in April 2009. Consequently, petitioner filed a petition with this Court in July 2009. Petitioner, unable to pay the filing fee associated with her petition, submitted financial information and requested a waiver of that fee. The Court reviewed her financial information and granted her request.

Petitioner is profoundly deaf and speech impaired, and she generally communicates using sign language. The highest level of education petitioner has completed was the 12th grade at a vocational school. She is currently unemployed, and she receives no alimony or child support from intervenor. Social Security insurance payments constitute petitioner's only steady source of income with which she supports herself as well as her three children. Petitioner has substantial nontax debt, does not own a car, and relies on public transportation for mobility.

After the petition was filed, respondent reviewed the merits of petitioner's claim for relief and determined that petitioner was, in fact, entitled to equitable relief under section 6015(f). Petitioner and respondent subsequently entered into a stipulation of settled issues whereby they agree that petitioner is entitled to a refund of the amounts paid by her (through voluntary payments and offsets) on the tax liability for 2005.

## Discussion

Generally, spouses who file a joint Federal income tax return are held jointly and severally liable for the entire tax liability. Sec. 6013(d)(3). A spouse, however, may be relieved from joint and several tax liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for any unpaid tax and relief is not available to the spouse under section 6015(b) or (c).[3]

---

[3] Petitioner seeks relief from an underpayment of income tax, not a proposed or assessed deficiency of income tax. Therefore, she is not eligible for relief under sec. 6015(b) or (c). See sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

In deciding whether a taxpayer is entitled to relief under section 6015(f), we have held that the applicable standard of review is de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004). The Commissioner has published guidance setting forth criteria to be considered in determining whether a requesting spouse is entitled to relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296, superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.

A. Threshold Conditions

Under the Commissioner's published guidance, the requesting spouse must first satisfy certain threshold conditions in Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298.[4] The record establishes that petitioner has satisfied all of the

---

[4] The threshold conditions are: (1) The spouse filed a joint return for the taxable year for which the spouse seeks relief; (2) relief is not available to the spouse under sec. 6015(b) or (c); (3) no assets were transferred between the spouses as part of a fraudulent scheme; (4) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (5) the requesting spouse did not file or fail to file the tax return with fraudulent intent; (6) with numerous exceptions, the tax liability from which the spouse seeks relief is attributable to an item of the nonrequesting spouse; (7) the requesting spouse applies for relief no later than two years after the date of the IRS' first collection activity. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 296, 297-298. However, a requesting spouse is no longer required to satisfy the two-year deadline under the seventh threshold condition. See Hall v. Commissioner, 135 T.C. 374 (2010) (holding that the two-

(continued...)

threshold conditions.  Moreover, respondent concedes that petitioner satisfies these conditions, and intervenor does not contend otherwise.

B.  Safe Harbor Requirements for Section 6015(f) Relief

If a requesting spouse fulfills the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, the Commissioner will ordinarily grant relief from joint and several liability with respect to underpayments on a joint Federal income tax return, provided all of the following requirements are satisfied:  (1) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the requesting spouse signed the joint return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief. Id. sec. 4.02, 2003-2 C.B. at 298.  We address each requirement in turn below.

---

[4](...continued)
year requirement is an invalid interpretation of sec. 6015(f)); Notice 2011-70, 2011-32 I.R.B. 135 (enlarging the period within which a spouse may request equitable relief under sec. 6015(f)).

1. <u>Marital Status</u>

Petitioner separated from intervenor in 2004, and the couple's divorce was finalized in 2006. Petitioner filed her claim for relief in August 2008. Therefore, on the date that she filed her claim for relief under section 6015(f), petitioner was no longer married to intervenor.

2. <u>Knowledge or Reason To Know</u>

Petitioner testified that on the date she signed the couple's 2005 Federal income tax return she believed that intervenor would pay the reported tax liability. On the entire record, we find her belief to be reasonable. At the time the joint tax return was filed, petitioner, not intervenor, provided support for the couple's children. The record indicates that intervenor earned substantially higher income than petitioner in 2005 and he continued to be employed in 2006. Indeed, when the 2005 tax return was filed, intervenor began making payments toward the outstanding liability. In 2007, however, intervenor was incarcerated by the Michigan Department of Corrections. Thereafter, he ceased making payments toward the outstanding tax liability. Given the facts and circumstances in this case, we find that on the date petitioner signed the couple's 2005 tax return, petitioner had no knowledge or reason to know that intervenor would not pay the outstanding tax liability.

3. Economic Hardship

To ascertain whether a requesting spouse will suffer economic hardship if the Commissioner denies his or her request for section 6015(f) relief, Rev. Proc. 2003-61, sec. 4.02, directs the Commissioner to base his decision on rules similar to those found in section 301.6343-1(b)(4), Proced. & Admin. Regs. Those rules provide that an economic hardship exists if an individual is unable to pay reasonable living expenses.

In determining a reasonable amount for basic living expenses, the Commissioner shall consider information provided by the taxpayer, including: (1) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else; (2) the amount reasonably necessary for food, clothing, housing, utilities, medical expenses, transportation, child support, and other necessities; (3) the cost of living in the geographical area in which the taxpayer lives; (4) the amount of property available to pay the taxpayer's expenses; (5) any extraordinary circumstances, e.g., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

In addition, the IRS has issued guidelines for allowable expenses. "Necessary expenses are those that meet the necessary expense test; i.e., 'they

must provide for a taxpayer's * * * health and welfare and/or the production of income' and they must be reasonable." Schulman v. Commissioner, T.C. Memo. 2002-129 n.6 (quoting Internal Revenue Manual pt. 5.15.1.3(2) (Mar. 31, 2000)). There are three types of necessary expenses: (1) Those based on national standards, e.g., food, housekeeping supplies, clothing, and personal care products and services; (2) those based on local standards, e.g., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards. Id.

Although we are not required to accept a taxpayer's testimony uncritically, see Ishizaki v. Commissioner, T.C. Memo. 2001-318, neither are we required to reject a taxpayer's testimony if we find it credible, see, e.g., Washington v. Commissioner, 120 T.C. 137, 150 (2003). Here, we accept petitioner's testimony, as we find it to be honest, forthright, and credible.

Petitioner receives Social Security insurance payments each month but currently cannot afford reasonable living expenses for herself and her three children. Petitioner has a high-school-level education, is currently unemployed, and receives no alimony or child support from intervenor. She does not own a car and must rely instead on public transportation. Moreover, she has substantial nontax debt.

Petitioner's testimony regarding her expenses, augmented by the national and local standards, indicates that her expenses equal, if not exceed, her income. Thus, we conclude that petitioner would face economic hardship if her request for relief under section 6015(f) were denied.

Intervenor contends that petitioner is not entitled to equitable relief under section 6015(f) because, in his view, she has the ability to pay the outstanding tax liability while he does not. As discussed above, we find that petitioner has established that she would face economic hardship if her request for relief were denied. Moreover, intervenor's inability to pay the outstanding tax liability is not a relevant consideration with respect to granting petitioner equitable relief under section 6015(f). Accordingly, on the basis of our review of all the facts and circumstances, we hold that petitioner is entitled to relief from joint and several liability under section 6015(f) for 2005.[5]

---

[5] Even if petitioner had failed to satisfy all three of the conjunctive safe harbor requirements provided by Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, the record indicates that she would nevertheless be entitled to equitable relief upon consideration of the factors enumerated in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, which provide an independent basis for relief and which weigh heavily in petitioner's favor.

## Conclusion

We have considered all of the substantive issues regarding petitioner's entitlement to relief from joint and several liability under section 6015(f). To the extent that we have not specifically addressed any argument made by intervenor, we conclude that it is irrelevant, moot, or without merit.

To reflect the foregoing, and in order to give effect to the stipulation between petitioner and respondent regarding the refund to which petitioner is entitled,

<u>Decision will be entered</u>

<u>under Rule 155</u>.