**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS E. JOHNSTON, and THOMAS
E. JOHNSTON, SUCCESSOR IN INTEREST
TO SHIRLEY L. JOHNSTON,
DECEASED,
            *Petitioner-Appellant,*

            v.

COMMISSIONER OF INTERNAL
REVENUE,
            *Respondent-Appellee.*

No. 04-73833

Tax Ct. No.
26005-96/2266-97

OPINION

Appeal from a Decision of the
United States Tax Court

Submitted June 8, 2006*
Pasadena, California

Filed September 1, 2006

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Lorraine Howell, Costa Mesa, California, and Kenneth M. Barish, Beverly Hills, California, for appellant Thomas E. Johnston.

Thomas J. Clark and Karen D. Utiger, Washington, D.C., for appellee Commissioner of Internal Revenue.

**OPINION**

BEA, Circuit Judge:

This case presents an attempt at "post-deal negotiation." It doesn't usually work in business. Why should we treat the tax collector differently?

Specifically, we address the following question: when a taxpayer offers to pay the Internal Revenue Service a sum certain to "fully resolve all adjustments at issue" for certain tax years, and the Commissioner accepts his offer, may the taxpayer then apply net operating losses ("NOLs") to reduce his agreed payments under the settlement? Here, the answer is no. The taxpayer did not reserve the right to use NOLs in the settlement agreement, nor did he raise the issue of using the NOLs before the Commissioner accepted his settlement offer. A deal is a deal, even with the tax man. Therefore, we affirm.

**Facts**

Thomas E. Johnston, on his own behalf and as the successor-in-interest to his late wife's estate, appeals the order of the tax court granting summary judgment for the Commissioner of Internal Revenue ("the Commissioner"). Beginning in the 1970s, Johnston conducted a real estate business in Southern California. His business was successful for many years, but, in 1988, it turned for the worse when the local real estate market crashed. Consequently, Johnston reported large tax losses for most of the tax years between 1988 and 1995, including the three years at issue here. Disputing these claimed losses, the Commissioner assessed tax deficiencies of $1,546,160 for 1989, $289,396 for 1991, and $341,908 for 1992, plus penalties.[1]

---

[1]The amount and type of penalties, which are immaterial here, are stated in the tax court's opinion. *See Johnston v. Comm'r*, 122 T.C. 124, 125 (2004).

In a letter dated January 31, 2003, Johnston offered to "resolve all adjustments at issues [*sic*] in the matters" docketed for tax years 1989, 1991, and 1992 for $105,000, or $35,000 per year. Johnston designated his offer as a "qualified offer" under I.R.C. § 7430(g). A qualified offer must "specif[y] the offered amount of the taxpayer's liability" for all adjustments pending in the case at the time the offer is made. *See* I.R.C. § 7430(g)(1)(B); Temp. Treas. Reg. § 301.7430-7T(c)(3) (2001).[2] To comply with this provision, Johnston's letter also stated "the taxpayer is aware that his offer is to resolve all adjustments in the court proceeding. Such offer will fully resolve the taxpayer's liability as to those adjustments[.]" In a letter dated February 10, 2003, the Commissioner accepted Johnston's offer without discussion or negotiation.

Johnston then stated that he intended to apply NOLs to reduce his liability under the settlement. If the NOLs Johnston sought to use proved to be valid, Johnston would be able to wipe out his stipulated tax deficiency for the settled tax years.[3] The result: Johnston would not owe anything under the settlement agreement.

The parties reserved the issue of NOLs in their stipulation of settled issues. Next, the tax court granted Johnston's motion for leave to amend his petition to include the claimed NOLs. Finally, upon the Commissioner's motion for summary judgment, the tax court held that the parties entered into a contract to settle the docketed cases and that Johnston could not claim his NOLs for the first time after settlement. *See Johnston v. Comm'r*, 122 T.C. 124, 129, 132-33 (2004).

---

[2]The temporary regulations apply here because Johnston made his offer before December 24, 2003. *See* Treas. Reg. § 301.7430-7(f) (2003).

[3]Johnston claimed NOLs of over $1,000,000.

## Analysis

We have jurisdiction under I.R.C. § 7482(a)(1), which provides for appellate review of final decisions of the tax court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." Thus, we review de novo the tax court's grant of summary judgment to determine "whether there is a genuine issue of fact and whether the tax court applied the substantive law correctly." *Talley Industries Inc. v. Comm'r*, 116 F.3d 382, 384 (9th Cir. 1997) (internal alterations omitted).

**[1]** As other circuits have held, a tax settlement is a contract that should be interpreted according to ordinary principles of contract law. *See Goldman v. Comm'r*, 39 F.3d 402, 405-06 (2d Cir. 1994); *Treaty Pines Inv. P'ship v. Comm'r*, 967 F.2d 206, 211 (5th Cir. 1992). Accordingly, our object is to ascertain the intent of the parties from the language of their agreement. *See* II E. ALLEN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.9 (3d ed. 2004). A tax settlement's meaning "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Yoo Han & Co., Ltd. v. Comm'r*, 62 T.C.M. (CCH) 83 (1991) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971)) (emphasis and citation omitted); *see also Stamm Int'l Corp. v. Comm'r*, 90 T.C. 315, 322 (1988). "Unless a different intention is manifested, . . . where language has a generally prevailing meaning, it is interpreted in accordance with that meaning . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 202(3) (1981).

**[2]** Johnston's January 31, 2003, letter manifests an intent to resolve the pending controversy over the 1989, 1991, and 1992 tax years for $105,000. The Commissioner accepted Johnston's offer by his February 10, 2003, letter. Thus, as the tax court correctly determined, the parties reached a settlement of the docketed tax years.

**[3]** Johnston's offer—which purported to "resolve all adjustments in the court proceeding" for the docketed years and "fully resolve the taxpayer's liability as to those adjustments"—does not even mention NOLs, let alone expressly reserve the right to offset NOLs against the agreed payment. If Johnston subjectively intended to offset his NOLs against the amounts to be paid under the settlement agreement, he kept this intention to himself. At least, he certainly never told the Commissioner. Since Johnston's intent was not objectively manifested before his offer was accepted, and he had reason to know of the Commissioner's intended meaning,[4] we will not interpret the agreement as Johnston wishes. *See* RESTATEMENT (SECOND) OF CONTRACTS § 201(2) (1981) (stating that where one party has no reason to know of any other meaning than that apparent from the other party's own words, and the other party did have reason to know the meaning the first party would attach to his words, the first party's understanding prevails).

**[4]** Johnston urges us to conclude that the qualified offer regulations, Temp. Treas. Reg. § 301.7430-7T (2001), change the preceding analysis. He claims that he could not raise the issue of NOLs in his settlement offer because the regulations governing qualified offers require the taxpayer to specify the amount of liability "with respect to all of the adjustments at issue in the administrative or court proceeding at the time the offer is made and only those adjustments." Temp. Treas. Reg. § 301.7430-7T(c)(3) (2001). Johnston's reliance on the qualified offer regulations, however, is misplaced. The regulations do not address the circumstances under which a taxpayer may apply NOLs as an offset to the resulting settlement. Instead, the regulations provide the method for determining whether a taxpayer who has succeeded in the litigation after the Commissioner rejects a qualified offer becomes a "prevailing

---

[4]Specifically, in his letter of acceptance, the Commissioner recited the amount offered for each tax year, and advised Johnston to send payment immediately to stop the accumulation of interest.

party" entitled to attorney's fees. *See* Temp. Treas. Reg. § 301.7430-7T(b) (2001). The rules set forth in this regulation have no bearing on when the issue of NOLs must be raised.

**[5]** On that question, courts have consistently held that a taxpayer cannot raise the issue of NOLs after settlement. *See Yoo Han & Co., Ltd.*, 62 T.C.M (CCH) 83; *Himmelwright v. Comm'r*, 55 T.C.M. (CCH) 403 (1988), *superseded in diff. part, as stated in Corson v. Comm'r*, 114 T.C. 354, 365 (2000); *Hartzog v. United States*, 6 Cl. Ct. 835, 838 (1984) ("It is well established that each tax year is the origin of a new liability and a separate cause of action. . . . Once a tax year is closed, it is closed as to all claims concerning that tax year, including those that could have been presented.") (citations omitted). Similarly, a taxpayer may not claim offsets similar to NOLs for the first time after settlement or judgment. *See Estate of Kokernot*, 112 F.3d 1290, 1295-96 (5th Cir. 1997) (taxpayer could not claim special-use valuation after settling estate tax deficiency); *Cloes v. Comm'r*, 79 T.C. 933, 935-36 (1982) (taxpayer could not apply income-averaging for the first time by way of a Rule 155 motion). We agree with and adopt those rules. As the tax court here explained, Johnston's attempt to raise the NOLs issue after the Commissioner's acceptance came "too late." *Johnston*, 122 T.C. at 132. The deal had been made; use of the NOLs to reduce tax payments for the years 1989, 1991, and 1992 was simply not part of the deal.

**[6]** In sum, when we apply ordinary principles of contract law to Johnston's offer and the Commissioner's acceptance, it is plain that Johnston may not use his NOLs to reduce his liability under the settlement.

Accordingly, the judgment of the tax court is **AFFIRMED**.