T.C. Memo. 2013-87

UNITED STATES TAX COURT

BARBARA JANE KNUDSEN, Petitioner, AND KURT H. KNUDSEN, Intervenor
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18048-09.                    Filed April 1, 2013.

Jan R. Pierce, for petitioner.

Kurt H. Knudsen, pro se.

Nhi T. Luu, for respondent.

MEMORANDUM OPINION

THORNTON, Judge:  Petitioner moves the Court to award her litigation

costs of $53,001 in attorney's fees and $60 in other costs pursuant to section 7430

[*2] and Rule 231.[1]  None of the parties have requested an evidentiary hearing on this matter, and we conclude that a hearing is not necessary.  See Rule 232(a).  We render our decision on the basis of the parties' stipulations of fact, exhibits, and settled issues and the uncontroverted declarations in the filings related to petitioner's motion.  We decide that petitioner is not entitled to any of the requested litigation fees or costs.

Background

Petitioner and her former husband, Kurt Hans Knudsen (intervenor), filed joint Federal income tax returns for 1998, 1999, 2000, and 2001 (subject years).  On December 23, 2008, respondent received from petitioner a Form 8857, Request for Innocent Spouse Relief, seeking equitable relief under section 6015(f) from joint and several liability as to all tax and related amounts stemming from the joint returns (claim).  On May 14, 2009, respondent issued to petitioner a final determination denying the claim as untimely because it was filed outside the two-year deadline set forth in section 1.6015-5(b)(1), Income Tax Regs. (two-year deadline).  The two-year deadline is the same rule that was the subject of Lantz v. Commissioner, 132 T.C. 131 (2009), rev'd, 607 F.3d 479 (7th Cir. 2010), and its

_____

[1]Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, Rule references are to the Tax Court Rules of Practice and Procedure, and dollar amounts are rounded.

**[\*3]** progeny.  This Court in <u>Lantz</u> invalidated the regulation setting forth the two-year deadline.

On July 28, 2009, petitioner petitioned the Court to review respondent's denial of her claim.  She resided in Oregon at that time.  Respondent answered the petition and then returned the claim to the Internal Revenue Service (IRS) Cincinnati Centralized Innocent Spouse Operation (CCISO) to consider the claim on its merits.[2]  The CCISO reviewed and denied the claim shortly thereafter.  In February 2010 petitioner submitted additional documents to respondent and requested that the CCISO reconsider that denial.  The CCISO reconsidered the claim on its merits but sustained its previous denial of the claim.

Intervenor intervened in this case on October 14, 2009.  Approximately six months later, on April 21, 2010, petitioner (through her counsel) submitted a "Qualified Offer" to respondent stating that she would pay $50 as to each subject

---

[2]After this Court invalidated the two-year deadline in <u>Lantz v. Commissioner</u>, 132 T.C. 131 (2009), <u>rev'd</u>, 607 F.3d 479 (7th Cir. 2010), Chief Counsel attorneys were directed to ask the CCISO to consider the merits of sec. 6015(f) claims in docketed cases where the IRS had denied sec. 6015(f) relief solely on the basis of the two-year deadline.  <u>See</u> Chief Counsel Notice CC-2009-012 (Apr. 17, 2009), <u>amplified and clarified by</u> Chief Counsel Notice CC-2010-005 (Mar. 12, 2010).

**[*4]** year (a total of $200) to settle her total tax liability for those years.[3] The offer stated that the $200 "reflects the fact that our client earned no income, had no obligation to file a return, and had no personal tax liability during those [subject] years." Respondent did not respond to petitioner's offer.

Generally from April 29, 2010, through January 31, 2011, the parties conducted discovery as to the merits of petitioner's claim. On or about February 23, 2011, respondent notified petitioner that she qualified for her requested relief but for the fact that she did not file her claim before the two-year deadline expired.

This case was called for trial on March 14, 2011, and petitioner and respondent each submitted a pretrial memorandum. Intervenor, an attorney, neither appeared for the calling of the case nor submitted a pretrial memorandum.

---

[3]While the record does not establish petitioner's total tax liability as of the time of this offer, she asserts that her unpaid tax liabilities with respect to the subject years were as follows as of January 10, 2011:

| Year | Amount |
|------|--------|
| 1998 | $49,076 |
| 1999 | 38,031 |
| 2000 | 44,708 |
| 2001 | 24,122 |
| Total | 155,937 |

She also asserts that intervenor's liability for those amounts was discharged in bankruptcy on February 9, 2009.

**[\*5]** On March 15, 2011, the case was recalled and the parties lodged a stipulation of settled issues, a stipulation of facts, and a joint motion for leave to submit to the Court pursuant to Rule 122 their dispute on the validity of the two-year deadline. The lodged documents were filed six days later. The parties state in those documents that they agree that petitioner qualifies for complete relief under section 6015(f) for all subject years if the two-year deadline is invalid. The parties also state that they dispute whether the two-year deadline is invalid. By order dated May 12, 2011, the Court granted the parties' motion and instructed the parties to file simultaneous opening briefs by August 30, 2011.

On July 25, 2011, the IRS announced as a policy directive that the Department of the Treasury would expand the two-year deadline "in the interest of tax administration and * * * not reflective of any doubt concerning the authority of the Service to impose the two-year deadline" and that the two-year deadline would no longer be enforced in cases docketed in this Court. Chief Counsel Notice CC-2011-017 (July 25, 2011); see also Notice 2011-70, 2011-32 I.R.B. 135. As of that time, three Courts of Appeals had held that the two-year deadline was valid. See Jones v. Commissioner, 642 F.3d 459 (4th Cir. 2011), rev'g and remanding an order and decision of this Court dated May 28, 2010; Mannella v. Commissioner, 631 F.3d 115 (3d Cir. 2011), rev'g 132 T.C. 196 (2009); Lantz v. Commissioner,

**[\*6]** 607 F.3d 479.  This Court had repeatedly held to the contrary, see, e.g., Pullins v. Commissioner, 136 T.C. 432 (2011); Hall v. Commissioner, 135 T.C. 374 (2010), Government appeal dismissed voluntarily, No. 10-2628 (6th Cir. Aug. 2, 2011); Mannella v. Commissioner, 132 T.C. 196; Lantz v. Commissioner, 132 T.C. 131,[4] but no Court of Appeals had agreed.  Contemporaneous with the July 25, 2011, announcement, respondent informed petitioner and intervenor that the two-year deadline no longer applied to deny petitioner the relief she requested and that she was entitled to her requested relief.  Approximately one month later, on August 24, 2011, respondent mailed to petitioner and to intervenor a proposed supplemental stipulation of settled issues in which respondent stated that petitioner was entitled to her requested relief under section 6015(f).

On August 29, 2011, the Court held a previously scheduled telephone conference with petitioner and respondent.  Intervenor was notified that the conference would be held at the scheduled time and, according to respondent's counsel, had discussed the matter with respondent's counsel and expressed his intention to participate in the conference.  Intervenor ultimately failed to

[4]We also note Payne v. Commissioner, docket No. 10768-09, an order and decision of this Court entered June 24, 2010, Government appeal dismissed voluntarily, No. 10-72855 (9th Cir. July 25, 2011).  There, we followed our opinion in Lantz v. Commissioner, 132 T.C. 131, invalidating the two-year deadline.

**[*7]** participate in the conference or to communicate with the Court about his failure to participate in the conference. During the conference respondent's counsel indicated that respondent was conceding that petitioner's claim was timely on the basis of Notice 2011-70, supra. The next day, the Court ordered that the parties were no longer required to file the scheduled briefs but had to file a supplemental stipulation of settled issues by September 29, 2011.

No supplemental stipulation of settled issues was ever filed. In a status report filed September 29, 2011, respondent indicated that petitioner and respondent had attempted to execute a supplemental stipulation of settled issues but were unable to do so. Respondent also reiterated that petitioner is entitled to her requested relief and maintained that intervenor "tentatively agrees" with that treatment as well. The report also referenced petitioner's motion for litigation fees and costs, which was filed one day before. On October 5, 2011, the Court ordered respondent and intervenor to each file a response to that motion. Respondent later filed such a response, but intervenor did not. Nor did intervenor ever file a response that the Court subsequently ordered him to file to petitioner's reply to respondent's response.

On May 8, 2012, the Court ordered the parties to show cause why petitioner should not be granted her requested relief. Petitioner filed a document stating that

**[\*8]** no cause exists to deny her her requested relief because respondent has concluded all issues in the case. Respondent filed a document stating essentially the same. Intervenor made no response to the show cause order.

## Discussion

Section 7430(a) authorizes this Court to award reasonable litigation costs (including attorney's fees) to a qualifying taxpayer who commences a proceeding in this Court. To qualify for a recovery of costs, a taxpayer such as petitioner must establish: (1) she is the prevailing party, (2) she has exhausted the administrative remedies available to her, (3) she did not unreasonably protract the proceedings, and (4) the amount of the costs requested is reasonable. See sec. 7430(a), (b), and (c); see also Rule 232(e); Grigoraci v. Commissioner, 122 T.C. 272, 275 (2004). These requirements are conjunctive, and the failure to satisfy any one of them precludes an award of costs. See Goettee v. Commissioner, 124 T.C. 286, 296 (2005), aff'd, 192 Fed. Appx. 212 (4th Cir. 2006); Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

Respondent objects to petitioner's motion on the grounds that (1) she was not the prevailing party within the meaning of the statute and (2) her claimed costs

**[\*9]** are unreasonable.[5] We need not and do not reach respondent's second ground because we conclude that petitioner is not a prevailing party for purposes of section 7430. Section 7430 generally provides that a taxpayer may qualify as a prevailing party only if either (1) the taxpayer has made a qualified offer in certain circumstances (qualified offer rule) or (2) the Commissioner's position is not substantially justified. See sec. 7430(c)(4); see also Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 59 (2001) (stating that the qualified offer rule may apply even where the Commissioner's position was substantially justified), aff'd, 55 Fed. Appx. 476 (9th Cir. 2003). Petitioner relies exclusively upon the qualified offer rule, which is implicated where "the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party".[6] Sec. 7430(c)(4)(E)(i). The qualified offer rule may not apply, however,

---

[5]Intervenor has not filed any response to petitioner's motion, despite the Court's order that he do so.

[6]Although petitioner fails to argue that respondent's position was not substantially justified, we note in passing that the record supports a conclusion that respondent's position was substantially justified in that it had a reasonable basis in both fact and law. See Huffman v. Commissioner, 978 F.2d 1139, 1147 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144; Swanson v. Commissioner,

(continued...)

**[*10]** where the "judgment [is] issued pursuant to a settlement".  Sec.

7430(c)(4)(E)(ii)(I).

Respondent and petitioner disagree as to whether the judgment in this case

will be "issued pursuant to a settlement".  Petitioner argues that the judgment will

not be issued pursuant to a settlement.  Respondent argues to the contrary.[7]  As

petitioner sees it, this case was not settled because the parties never mutually agreed

to end the case; instead respondent unilaterally declared that he was conceding the

case in full.  Petitioner adds that the parties did not discuss or negotiate

respondent's concession before it was made and that she offered to settle the case

for $200 whereas respondent unilaterally went one step further by conceding

(without any input from petitioner) that her liability was zero.

---

[6](...continued)
106 T.C. 76, 86 (1996).

[7]Respondent does not address, nor do we decide, whether petitioner's $200 offer was meaningful enough to be considered a "qualified offer" for purposes of sec. 7430(c)(4)(E)(i).  The qualified offer rule was tailored after Fed. R. Civ. P. 68 to "'provide an incentive for the IRS to settle taxpayers' cases for appropriate amounts'", see Johnston v. Commissioner, 122 T.C. 124, 129 (2004) (quoting S. Rept. No. 105-174, at 48 (1998), 1998-3 C.B. 537, 584), aff'd, 461 F.3d 1162 (9th Cir. 2006), and at least one Court of Appeals has decided that rule 68 is triggered only through a good-faith offer, see August v. Delta Air Lines, Inc., 600 F.2d 699, 700-702 (7th Cir. 1979), aff'd on other grounds, 450 U.S. 346 (1981).

**[\*11]** Petitioner relies in part upon Estate of Lippitz v. Commissioner, T.C. Memo. 2007-293, stating in her reply to respondent's objection that the case "is directly on point". There, the CCISO determined that the taxpayer was entitled to relief under section 6015 and recommended that the taxpayer receive such relief. The Commissioner filed an answer approximately one month later, however, denying that the taxpayer was entitled to any such relief. Shortly thereafter, the CCISO's determination was disclosed to the taxpayer, the taxpayer filed a "dispositive motion" for partial summary judgment after the Commissioner declined to accept her qualified offer, and the Commissioner eventually conceded that the taxpayer was entitled to her requested relief. The Court held that the Commissioner's concession was not a "settlement" within the meaning of the statute under the facts therein. The Court emphasized that "Respondent was unwilling to settle this case on the terms and at the times offered by petitioner" but waited until just before the resolution of a dispositive motion to concede the matter. Id.

Later, the Court held that the Commissioner's concession in Trzeciak v. Commissioner, T.C. Memo. 2012-83, was a settlement within the meaning of section 7430(c)(4)(E)(ii)(I). In Trzeciak, the taxpayers moved for litigation costs after the Commissioner had conceded all items in the notice of deficiency. The

[*12] taxpayers relied upon Estate of Lippitz in arguing that the Commissioner's concession was not a settlement. The Court disagreed, stating that the case was "materially distinguishable" from Estate of Lippitz and that the taxpayers' reliance on that case was "misplaced". Trzeciak v. Commissioner, T.C. Memo. 2012-83. The Court noted that the taxpayer in Estate of Lippitz had made multiple settlement offers and was forced to actively litigate the case by filing a motion for partial summary judgment. Id.

We believe that the concession here is similar to the concession in Trzeciak and is a "settlement" within the meaning of section 7430. Contrary to petitioner's assertion, the case of Estate of Lippitz is not directly on point with the instant case. In this case, unlike in Estate of Lippitz, respondent did not ultimately concede that he was wrong on the merits given the facts or law that existed when he first took a position in the case. Respondent's concession that petitioner was entitled to her requested relief resulted from an administratively promulgated policy directive to cease enforcing the two-year deadline in the interests of tax administration. Respondent conceded this case shortly after that policy change.[8] Nor, unlike

---

[8]Petitioner asserts that a settlement must relate to the merits of the case and cannot result from a change in the applicable law. We disagree for the reasons just stated. Petitioner also asserts (in her reply to respondent's response) that she was

(continued...)

**[\*13]** <u>Estate of Lippitz</u>, is this a case in which the Commissioner conceded error in the face of a likely adverse judicial decision. While petitioner construes <u>Estate of Lippitz</u> to foreclose the Commissioner from settling for purposes of section 7430 any case that has been submitted to the Court for decision, we do not read <u>Estate of Lippitz</u> so broadly. Whether the Commissioner settles a case for purposes of section 7430(c)(4)(E)(ii)(I) does not rest entirely on the timing of the Commissioner's concession but instead depends on all the facts and circumstances.

Petitioner also argues that respondent's concession cannot be a settlement because, she states, the concession was not a contract in that the concession was a unilateral action that lacked an offer and an acceptance and, hence, mutual assent. To that end, petitioner asserts, the parties neither discussed nor negotiated the terms of the concession; instead respondent thrust the concession upon her without affording her the opportunity to reject it. Petitioner asserts further that the qualified offer rule contemplates that she would be liable for the amount that she

---

[8](...continued)
advancing in this proceeding an equitable tolling issue as to the two-year deadline in the event the deadline were held valid. Petitioner's pretrial memorandum, however, makes no mention of such an issue, asserting solely that the two-year deadline is inapplicable because it is invalid. Nor does the parties' motion for leave to submit this case to the Court pursuant to Rule 122 make any mention of an equitable tolling issue.

**[*14]** offered and she never offered to settle the case for no liability, which is what respondent ultimately conceded. In short, petitioner suggests, a concession can never be a settlement when the concession is made voluntarily without bargaining between the parties or without their express mutual assent.

We disagree that respondent's concession was not eventually memorialized in a contract between petitioner and respondent. "A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been reached." Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), aff'd without published opinion, 208 F.3d 205 (3d Cir. 2000). A contract requires "an objective manifestation of mutual assent to its essential terms", and mutual assent is typically established through an offer and an acceptance. Id. The parties to a contract need not manifest their mutual assent explicitly but may do so implicitly through their actions or inactions as viewed in the light of the surrounding facts and circumstances. See, e.g., Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002); Ahern v. Cent. Pac. Freight Lines, 846 F.2d 47, 49 (9th Cir. 1988).

We have little difficulty concluding from the record that respondent's concession was an offer to petitioner to settle this case by granting her requested relief and that she accepted (or in other words, assented to) this offer on the basis

**[*15]** of the tendered terms.[9]  The fact that respondent informed petitioner that he was conceding that she was entitled to her requested relief does not mean, as she concludes, that she had to accept the concession as tendered.  While it does not happen often, a taxpayer such as petitioner could easily reject the Commissioner's full concession of a case and ask the Court to exercise our discretion to decide the case on its merits.  See, e.g., McGowan v. Commissioner, 67 T.C. 599, 604-608 (1976).  Petitioner, however, never manifested any objection to respondent's concession notwithstanding the many occasions on which she had an opportunity to do so.  In addition, the parties' failure to communicate the concession in a formalized stipulation of settled issues carries little weight in our analysis because the filing of a written agreement is not necessary to the finding of a settlement.  See Johnston v. Commissioner, 122 T.C. 124, 129 (2004), aff'd, 461 F.3d 1162 (9th Cir. 2006).  Nor do we agree, as petitioner avers, that a settlement requires active bargaining or negotiations between the parties.  Key facts leading to our finding that the parties settled this case for purposes of section 7430(c)(4)(E)(ii)(I) include that respondent informed petitioner that he was conceding that she was

[9]We also conclude that intervenor, an attorney, agreed with the concession given that he opted not to participate in our telephone conference as to the matter, reportedly after discussing the matter with respondent's counsel, and that in connection with our show cause order he later chose not to inform the Court of any disagreement he had with the concession.

**[*16]** entitled to her requested relief, that she never challenged the concession after hearing it but accepted the accompanying benefits in full, and that we will enter our judgment in this case without ever ruling on the merits of her claim. Ultimately, we will enter a judgment in this case that in relevant part reflects respondent's concession, as petitioner in her response to our show cause order agreed we should do.

Our reading of the regulations underlying the qualified offer rule also supports our position. The regulations draw no distinction between a settlement and a concession and treat a taxpayer's settlement the same as the taxpayer's concession. See sec. 301.7430-7(e), Examples (1) and (2), Proced. & Admin. Regs.[10] The regulations also define the word "judgment" for purposes of the qualified offer rule to mean "the cumulative determinations of the court concerning the adjustments at issue and litigated to a determination in the court proceeding", sec. 301.7430-7(a), Proced. & Admin. Regs., and set forth by example that an issue that a taxpayer disputes in court but ultimately concedes or settles is outside the meaning of the word "judgment" because the issue "was not

---

[10]Black's Law Dictionary also draws no material distinction between the terms. Compare Black's Law Dictionary 328 (9th ed. 2009) (defining "concession" in relevant part as "The voluntary yielding to a demand for the sake of a settlement") with id. at 1496 (defining "settlement" in relevant part as "An agreement ending a dispute or lawsuit").

[*17] determined by the court, but rather by concession or settlement", sec. 301.7430-7(e), Example (1), Proced. & Admin. Regs.  See also T.D. 9106, 2004-1 C.B. 384, 385, stating as to section 301.7430-7, Proced. & Admin. Regs.:

> The proposed regulations provided that a prevailing party may not recover fees under the qualified offer rule for any issue that is settled.  Recovery is limited to issues that are actually determined by a court.  One commentator recommended that the final regulations permit the recovery of fees attributable to adjustments that are settled.  The final regulations do not adopt this comment.  * * *

Petitioner also argues that a finding that respondent's concession was a settlement would defeat the intent of the qualified offer rule.  We disagree.  The qualified offer rule was included in the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 3101(e)(1) and (2), 112 Stat. at 728-729, and the legislative intent for the rule supports our position.  The qualified offer rule was designed to "'provide an incentive for the IRS to settle taxpayers' cases for appropriate amounts'".  Johnston v. Commissioner, 122 T.C. at 129 (quoting S. Rept. No. 105-174, at 48 (1998), 1998-3 C.B. 537, 584).  We find nothing in the record that leads us to conclude that respondent was unwilling to settle this case for an "appropriate amount".  Instead, the record establishes that respondent was willing to settle this case, contrary to the CCISO's determinations, but for the fact that the two-year deadline, as explicitly and unambiguously

**[\*18]** written, precluded petitioner from requesting her desired relief in the first place.  Although that rule was repeatedly invalidated by this Court (first in <u>Lantz</u> and later in subsequent cases), as of June 13, 2011, three Courts of Appeals had held to the contrary.  Respondent properly and timely conceded that petitioner was entitled to her desired relief when the Commissioner announced that he would cease enforcing the two-year deadline.

We will deny petitioner's motion for fees and costs.  We have considered all arguments the parties made for contrary holdings and, to the extent not discussed, we have rejected those arguments as without merit.  To reflect the foregoing,

<u>An appropriate order and</u>

<u>decision will be entered</u>.